John WADLEY and Tedarrell
Wadley, Appellants,

v.

STATE of Tennessee, Appellee.

Court of Criminal Appeals of Tennessee,
at Knoxville.

March 15, 1982.

Permission to Appeal Denied
by Supreme Court June 1, 1982.

Rodney C. Strong, Chattanooga, for appellant, John Wadley.

Michael D. Ronan, Chattanooga, for appellant, Tedarrell Wadley.

William M. Leech, Jr., Atty. Gen., J. Andrew Hoyal, II, Asst. Atty. Gen., Nashville, Gary Gerbitz, Dist. Atty. Gen., Thomas J. Evans, Peter J. Strianse, Dist. Attys. Gen., Chattanooga, for appellee.

## OPINION

DUNCAN, Judge.

Appellant John Wadley was convicted of armed robbery, aggravated kidnapping, and felonious assault with intent to commit murder in the first degree (causing bodily injury), receiving penitentiary sentences of ten (10) years, twenty (20) years, and five (5) years, respectively. He was also convicted of unlawfully carrying a pistol and

received a penal farm sentence of eleven (11) months and twenty-nine (29) days and a fine of fifty dollars ($50.00) for this offense. The trial court ordered these sentences to be served consecutively.

Appellant Tedarrell Wadley was convicted of armed robbery, aggravated kidnapping, and assault with intent to commit murder in the second degree, receiving penitentiary sentences of ten (10) years, twenty (20) years, and not less than one (1) year nor more than one (1) year, respectively. His sentences were also ordered to be served consecutively.

The appellants raise a number of issues in this appeal, none of which we find merit any relief.

First, the appellants challenge the legal sufficiency of the evidence.

The State's evidence, which was accredited by the jury, showed that on January 16, 1981, Gene Fish, an employee of the Ramada Inn in East Ridge, was robbed by two (2) black males at gunpoint.

According to the testimony of the victim, the two (2) robbers entered the motel and one of them jumped behind a post, shielding himself from the victim's view. The other, identified at the trial by the victim as John Wadley, came over the counter and the victim got a good look at him. John Wadley forced the victim to lie down on the floor and the robbers took money from the cash register. John Wadley then took from the person of the victim his wallet and watch.

Subsequently, according to the victim, John Wadley forced him to walk to the robbers' car, instructing him to keep his eyes covered. As they were walking some fifty (50) feet across the parking lot, which was well lit, the victim peeked and got another look at John Wadley. The victim was forced into the car and placed in the middle of the front seat between John Wadley and the driver. John Wadley told the victim to keep his head down or he would "blow it away." Nevertheless, the victim was able to observe the car and noticed that it was a 1971 or 1972 gold Chevrolet, with a black vinyl top. He noticed that the glass in the right front vent window had been broken out and plastic had been stuffed into the vent, and also observed a significant torn place on the front seat of the car. The driver of the car drove to the rear of the East Gate Shopping Center, and the victim was told to get out. When the victim started to run, one of the robbers shot him in the back, but fortunately the wound was not fatal. After the robbers drove away, a woman took the victim to the hospital. Later he was interviewed at the hospital by the police and gave them a detailed description of the robber who had the gun, a general description of the other robber, and a minute description of the robbers' vehicle.

The evidence showed that Tedarrell Wadley had been a former employee of the Ramada Inn but had been fired shortly before the robbery. The victim testified that he knew Tedarrell Wadley as a former employee of the motel, but that because he did not get a good view of the second robber inside the motel, and because he was required to keep his head down when he was put in the car, he could not say with "one hundred percent honesty" that Tedarrell Wadley was the other man.

Other evidence presented by the State established that four (4) days later, on January 20, 1981, Officer William Correll and Detective Larry Holland saw a vehicle that matched in all respects the description of the robbery car. The officers stopped this vehicle and found it occupied by the appellant Tedarrell Wadley and a female companion. The officers told this appellant that he was a suspect in the robbery of the Ramada Inn and advised him of his *Miranda* rights. Tedarrell told them that he was on his way to the Ramada Inn to pick up a check, explaining that he had been recently employed at the motel. The officers permitted him to go and pick up his check, then took him to the police station where he told the police that he had had the vehicle only a short time and that he "didn't let anyone" drive his vehicle. Tedarrell Wadley's female companion drove the car to the station where photographs were taken of

the car and Tedarrell, and he was then released. Thereafter, the victim identified the car that was depicted in the photograph as being the vehicle that was used by the robbers in connection with their commission of these crimes.

Further, according to the State's evidence, the police obtained an arrest warrant for Tedarrell, and on October 23, 1981, the police found his vehicle as Tedarrell was parking it at a liquor store. The car was occupied by Tedarrell and his uncle, the appellant John Wadley. When the police ordered them out of the car, Tedarrell got out immediately but John hesitated, stooped over as if putting something under the seat, and then stepped out. One of the officers looked under the seat where John had been sitting and found a pistol. Both appellants were arrested and taken to jail.

Also, testimony from a firearms expert established that the bullet that had been fired into the victim's body, had been fired from the pistol found in Tedarrell Wadley's car.

From our review of all of the direct and circumstantial evidence in this case, we conclude that it is ample to show the appellants' guilt. Unquestionably Tedarrell Wadley's vehicle was the vehicle used in the commission of these crimes. The likelihood that any other car of this make and model would have had a tear in the seat, as well as plastic in the vent window, is so remote as to be nonexistent. Tedarrell's statement that he allowed no one else to drive his car warranted the jury in finding that he was the driver on the occasion of these crimes. The finding of the robbery pistol in his car at the time of his arrest was another strong piece of evidence implicating Tedarrell in these crimes. The same is true as to John Wadley, and the jury was entitled to infer that he put the robbery weapon under the seat just prior to getting out of the car. Also, the victim positively identified John Wadley as one of the perpetrators of these crimes.

We find that the evidence in this case is more than sufficient to support the jury's verdict finding the appellants guilty beyond a reasonable doubt. *T.R.A.P.* 13(e); *Jackson v. Virginia*, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979). Further, we find from our review of the evidence that the trial court correctly overruled Tedarrell Wadley's motion for judgment of acquittal.

Next, appellant John Wadley contends that the victim's identification testimony should have been suppressed.

■ First, he argues that his arrest on January 23, 1981, was illegal and that the victim's identification of him flowed from that illegal arrest. We need not consider the question of whether John Wadley was lawfully arrested because there is no constitutional immunity from an unlawful arrest, and an "identification otherwise valid does not come under the exclusionary rule because the arrest is illegal." *State v. Miller*, 608 S.W.2d 158 (Tenn.Cr.App.1980).

Second, appellant John Wadley says that the victim's identification of him was tainted by an improper showup.

Seven (7) days after the robbery of the victim, John Wadley was arrested, taken to the police station, and was placed in some type of holding room. The victim was called to the station to view a suspect. Upon arrival, the victim was told to walk by the holding room and to observe the persons in it. There were only two (2) people in the room. One was John Wadley and apparently the other one was Tedarrell Wadley. When the victim walked by the room he could see John Wadley, but could not see the face of the other suspect because that suspect's back was turned. The victim then told the police that he could identify John Wadley as one of the robbers.

■ Clearly, this station house showup was improper and was a totally unnecessary procedure. No reason existed for not holding a proper lineup. In fact, the record shows that a lineup was conducted following this inherently suggestive showup. In the absence of imperative circumstances, one-on-one confrontations have been repeatedly condemned. *See, e.g. Stovall v. Denno*, 388 U.S. 293, 87 S.Ct. 1967, 18 L.Ed.2d 1199 (1967); *Marsh v. State*, 561

S.W.2d 767 (Tenn.Cr.App.1977); *Hampstead v. State,* No. 576 (Tenn.Cr.App., Knoxville, March 3, 1978).

In the *Hampstead* case, our Court was concerned with an improper station house showup, very similar to the present showup, and significantly, that showup also concerned the East Ridge Police Department, the same police department concerned here. In our opinion in that case, we emphatically pointed out that these station house showups should be abandoned forthwith. Obviously, our warning in *Hampstead* has gone unheeded by the responsible law enforcement officials in Hamilton County. We again reiterate that these one-on-one station house showups must be abandoned, and the district attorney general for Hamilton County would be well advised to convey this message to the responsible officials of the East Ridge Police Department.

Nevertheless, even where a suggestive identification procedure has been utilized, we are obligated to consider the reliability of the identification in the light of the holdings of such cases as *Manson v. Brathwaite,* 432 U.S. 98, 97 S.Ct. 2243, 53 L.Ed.2d 140 (1977), *Neil v. Biggers,* 409 U.S. 188, 93 S.Ct. 375, 34 L.Ed.2d 401 (1972), *Simmons v. United States,* 390 U.S. 377, 88 S.Ct. 967, 19 L.Ed.2d 1247 (1968), *Stovall v. Denno, supra, Rippy v. State,* 550 S.W.2d 636 (Tenn. 1977), and *Bennett v. State,* 530 S.W.2d 511 (Tenn.1975).

In *Simmons v. United States, supra,* the Court held that a due process violation may be present if the identification procedures used were so impermissibly suggestive as to give rise to "a very substantial likelihood of irreparable misidentification." 88 S.Ct. at 971. In *Stovall v. Denno, supra,* the Court announced a "totality of the circumstances rule," which was reaffirmed in *Simmons v. United States, supra.* In *Manson v. Brathwaite, supra,* the Court held that "reliability is the linchpin in determining the admissibility of identification testimony." 97 S.Ct. at 2253. In *Bennett v. State, supra,* our Supreme Court adopted the "totality of the circumstances" rule announced in *Stovall.* Also, in *Bennett* and later in *Rippy v. State, supra,* our Supreme Court stated that the factors laid down in *Neil v. Biggers, supra,* should be considered in evaluating the likelihood of misidentification. These factors include the opportunity of the witness to view the criminal at the time of the crime, the witness's degree of attention, the accuracy of the witness's prior description of the criminal, the level of certainty of the witness at the confrontation, and the length of time between the crime and the confrontation.

When the victim's testimony in the present case is considered in the light of these enumerated factors, we find that his identification of John Wadley was sufficiently reliable to withstand this appellant's due process attack despite suggestiveness in the identification procedure.

The victim testified that he got "a real good look" at John Wadley, "because he came over the counter with a gun in his hand." He said that the place was adequately lighted and that he observed John Wadley for at least a minute. Also, he said that as he was being escorted to the car, and even though he had been instructed to place his hands over his eyes, he was able to peek and get a second look at the man "who was holding the gun on me." Further, the victim was not a casual or disinterested observer. Obviously, his attention was focused on John Wadley because this appellant was the one who had the gun, and John Wadley had come close enough to the victim to remove some of the victim's possessions from his pocket. Also, the victim accurately described this appellant to the police as being five feet eight inches or five feet nine inches tall, with a medium build, and a light beard. The victim's ability to give a minute description of the robbers' car which turned out to be extremely accurate, shows that he was paying close attention to his surroundings. Additionally, when the victim saw this appellant at the station house, he did not hesitate in identifying him. The victim testified that he "simply recognized him as being the person holding the gun on me." We also note that

the time between the crime and the confrontation was only seven (7) days.

Thus, while we find the station house showup to be improper, we further find that the proof shows that the victim's in-court identification of John Wadley was based upon his observation of him at the time of the crimes and that such identification was not tainted by the improper showup.

We hold that the trial court properly allowed the victim's identification testimony to be admitted into evidence.

Next, appellant Tedarrell Wadley contends that his arrest on January 20, 1981, was illegal, and that therefore, his statements to the police and the photographs taken of his automobile should have been suppressed.

Despite Officer Correll's testimony that Tedarrell Wadley voluntarily accompanied the officers to the police station and the fact that Tedarrell was subsequently released, we are of the opinion that the facts show that he was arrested on this occasion. However, we conclude that his arrest was lawful.

An officer may make a lawful arrest without an arrest warrant where a felony has been committed and the officer has reasonable cause to believe the person arrested has committed it. T.C.A. § 40–803 (1975); *West v. State*, 221 Tenn. 178, 425 S.W.2d 602 (1968). Reasonable or probable cause is such as would justify a reasonable man to believe that the person arrested was guilty of the felony. *Davis v. State*, 2 Tenn.Cr.App. 297, 453 S.W.2d 438 (1970). It is not necessary that the arresting officer have absolute assurance of guilt. *Grey v. State*, 542 S.W.2d 102 (Tenn.Cr.App.1976).

In the present case, Officer Correll had information that the victim had been robbed and kidnapped, and that a gold 1971 or 1972 Chevrolet, with a black vinyl top, was the automobile that had been used by the robbers in carrying out these crimes. Further, he had information that the vehicle had a missing vent window that had been replaced by a plastic filling. Thus,

when he saw this automobile four (4) days after the robbery and saw that it matched perfectly with the unique description he had of it, he was authorized to reasonably conclude that the driver was implicated in the crimes that had been committed. Probable cause existed to justify the arrest of the driver, and clearly the officer had a right to seize the car as evidence of the crimes committed. Further, we point out that after the car was stopped, the officer could see that the driver's physical description fitted the general description that he had of one of the robbers. Additionally, the officer learned that Tedarrell Wadley had previously been employed at the Ramada Inn, the place that had been robbed. All of these things furnish sufficient probable cause to justify a lawful arrest of Tedarrell Wadley. The facts here meet the definition of reasonable cause as set forth in *Jones v. State*, 161 Tenn. 370, 33 S.W.2d 59 (1930).

The fact that Officer Correll did not subjectively think that he had probable cause to arrest Tedarrell, which prompted him later to release him, is not controlling. The controlling issue in matters of this kind is not whether an officer subjectively thinks he has probable cause, but rather whether the facts and circumstances within the officer's knowledge at the time of the arrest actually constitute probable cause. *State v. Duer*, 616 S.W.2d 614 (Tenn.Cr.App.1981). And as we have indicated above, we are satisfied that the facts and circumstances here were sufficient to show probable cause.

Therefore, regarding the foregoing complaint, we hold that the trial court correctly overruled Tedarrell Wadley's motion to suppress.

Next, both appellants challenge the trial court's denial of their motion to suppress the pistol found in the search of Tedarrell Wadley's car when they were arrested on January 23, 1981, insisting that their arrest was illegal.

After Tedarrell's initial arrest on January 20, the officers obtained arrest warrants for him and had these when they arrested him

on January 23. While there are statements in the record by counsel indicating that these arrest warrants were invalid because of insufficient affidavits, we find that these warrants were not made a part of this record. Thus, in the absence of these warrants, we are in no position to say that they were invalid. Notwithstanding and assuming *arguendo* that the arrest warrants were defective in some manner, probable cause still was present for Tedarrell's arrest without a warrant. The same facts that we have discussed under Tedarrell's complaint about his January 20 arrest were extant on January 23. Also, the officers had additional information in the form of a statement by Tedarrell that no one else had been permitted to drive his car. Thus, since his car had obviously been used in committing these crimes on January 16, and since no one else had driven it according to him, then the necessary conclusion is that he was driving it on the occasion of the crimes. Unquestionably, probable cause existed on January 23 to arrest Tedarrell and to seize his vehicle. Once he was in lawful custodial arrest, then the search of his vehicle was proper as an incident to such lawful arrest. *New York v. Belton*, 453 U.S. 454, 101 S.Ct. 2860, 69 L.Ed.2d 768 (1981).

Regarding John Wadley's search complaint, we need not consider it because at the trial he asserted no ownership or possessory interest in the car or pistol. Thus, he has no standing to challenge the search of the car. *Rakas v. Illinois*, 439 U.S. 128, 99 S.Ct. 421, 88 L.Ed.2d 387 (1978).

Both appellants complain about a remark by the prosecuting attorney during voir dire to the effect that the appellants tried to murder the victim so as to keep him from being a witness. A complaint is also made about the prosecuting attorney's closing argument where he argued matters of the same general tenor. The trial court correctly sustained the appellants' objection regarding this matter when it was brought up during the voir dire, and correctly overruled it at the argument stage. The evidence warranted these comments during argument, and since it was a proper subject matter for comment at that stage, the prosecuting attorney's premature comment on this subject matter during voir dire did not prejudice the appellants and did not warrant the granting of the appellants' motion for a mistrial.

John Wadley also complains about some comments made by the prosecuting attorney in an unrelated case. Apparently these comments were made prior to the seating of the appellants' jury and were made during argument on some motion involved in a rape case. The appellants argue that the jury venire was prejudiced due to these remarks. We have reviewed these remarks and see no way in which they could be said to have prejudiced the appellants. Moreover, there is nothing in the record to show that the jurors who sat on the appellants' case were even present in the courtroom when those comments were made. We find no error.

Additionally, John Wadley argues that it was error to admit evidence of his arrest on January 23, 1981. Evidence that John Wadley was in a car that had been used some seven (7) days prior to his arrest in committing the crimes of robbery, kidnapping and felonious assault, and that a gun found under his seat when arrested, was the gun that had been used in committing these crimes, was certainly probative on his trial for those crimes. Also, the evidence about the gun was probative on his charge of unlawfully carrying a weapon, which charge was tried at the same time. The evidence was properly admitted.

Finally, both appellants challenge the trial court's order imposing consecutive sentences on them. The trial court found both appellants to be dangerous offenders and further found that John Wadley was also a persistent offender. The record fully supports these findings by the trial court, and thus, each appellant was an eligible candidate for consecutive sentencing. *Gray v. State*, 538 S.W.2d 391 (Tenn.1976).

We find no reversible error in this record and the judgments are affirmed.

DAUGHTREY and TATUM, JJ., concur.