# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE

## AT NASHVILLE

SEPTEMBER 1997 SESSION

FILED

January 21, 1998

Cecil W. Crowson
Appellate Court Clerk

| | | |
|---|---|---|
| **STATE OF TENNESSEE,** | ) | |
| | ) | |
| Appellee, | ) | C.C.A. No. 01C01-9609-CR-00389 |
| | ) | |
| vs. | ) | Davidson County |
| | ) | |
| **ROY DALE WAKEFIELD, JR.,** | ) | Hon. Thomas H. Shriver, Judge |
| | ) | |
| Appellant. | ) | (Aggravated Robbery, |
| | ) | Attempted Aggravated Robbery) |

FOR THE APPELLANT:

TOM WHITESIDE
Attorney at Law
172 Second Ave. North, Ste. 214
Nashville, TN 37201

FOR THE APPELLEE:

JOHN KNOX WALKUP
Attorney General & Reporter

ELIZABETH B. MARNEY
Assistant Attorney General
Criminal Justice Division
450 James Robertson Parkway
Nashville, TN 37243-0493

VICTOR S. JOHNSON, III
District Attorney General

NICK BAILEY
Assistant District Attorney General
222 Second Ave North, Ste. 500
Nashville, TN 37201-1649

OPINION FILED: _____

**AFFIRMED**

CURWOOD WITT
JUDGE

## OPINION

The defendant, Roy Dale Wakefield, Jr., appeals his conviction of aggravated robbery and attempted aggravated robbery. His conviction resulted from a jury trial in the Davidson County Criminal Court. A Range I offender, Wakefield was given an effective eleven year sentence, which he is serving in the Department of Correction. In this direct appeal, he raises three issues for our consideration:

1. Whether the charges against him should have been dismissed based on violation of his right to a speedy trial.

2. Whether he was denied the right to confront a witness and a fair trial by the trial court's admission of a witness's prior statement under oath.

3. Whether the trial court erred in denying his motion for judgment of acquittal based on an insufficiency of evidence properly identifying the defendant as one of the perpetrators of the crime.

Having considered the parties' arguments in conjunction with the record on appeal, we find no error and affirm the judgment of the trial court.

In the early morning hours of July 11, 1993, two employees of the Bellevue Captain D's Restaurant in Davidson County were approached in the restaurant parking lot by two armed males wearing bandanas over portions of their faces. The males demanded the money bag from the restaurant, which the victims did not have. The males then took five dollars from one of the victims and searched the other victim's person but found nothing of value. The robbers fled on foot, and the victims alerted the authorities, who responded shortly thereafter.

Officer Todd Frye of the Metropolitan Police Department was patrolling the Bellevue area. While on his way to another call, he received information over his police radio about the robbery of the Captain D's employees. As he traveled in the vicinity, he noticed a car with a missing headlight coming from the area of the

2

robbery. He initiated a traffic stop. As a result of the stop, Frye and another officer ultimately discovered a handgun, ammunition, a knife and bandanas in the vehicle. After receiving identifying information about the robbers, Frye determined that two of the vehicle's four occupants fit the description. A "showup" was conducted, and the victims identified Wakefield and a juvenile companion as the individuals who robbed them. Wakefield and the juvenile were arrested.

Ultimately, a presentment was returned against Wakefield on December 13, 1994, approximately 17 months after his arrest. He was tried on December 12, 1995, resulting in the convictions which bring him before this court.

## I

In his first issue, Wakefield claims the trial court erred in denying his motion to dismiss based upon infringement of his right to a speedy trial. He claims the 17 month delay between the date of his arrest and the return of the presentment constitutes impermissible delay which is presumptively prejudicial. He further claims he was actually prejudiced because the tape of the victims' 911 call in which the victims allegedly described their assailants was erased during the delay. The state analyzes the issue differently from the defendant. It posits that this is not a case for speedy trial analysis, but one of due process inquiry based upon the delay between the commission of the offense and commencement of adversarial proceedings. Ultimately, the state argues the trial court correctly denied the motion to dismiss.

A criminal defendant has a right to a speedy trial. U.S. Const. amend. XI; Tenn. Const. art. I, § 9; Tenn. Code Ann. § 40-14-101; see Tenn. R. Crim. P. 48(b). This right accrues when the defendant is arrested or indicted, whichever is first, and continues until the time of trial. United States v. Loud Hawk, 474 U.S. 302, 311-14, 106 S. Ct. 648, 654-55 (1986). Similarly, although there is no constitutional

3

right to be arrested, an undue delay between the commission of an offense and the initiation of criminal proceedings may violate due process. State v. Dykes, 803 S.W.2d 250, 255 (Tenn. Crim. App. 1990). In the case at bar, Wakefield was arrested almost immediately after the crime; thus, we agree with him that the proper basis for our analysis is his right to a speedy trial, rather than the due process analysis advanced by the state.

In determining whether a criminal defendant's right to a speedy trial has been violated, the Tennessee Supreme Court has adopted the approach announced by the United States Supreme Court in Barker v. Wingo, 407 U.S. 514, 92 S. Ct. 2182 (1972). Under the Barker analysis, four factors determine whether a defendant's right to a speedy trial has been violated. They are (1) the length of the delay, (2) the reason for the delay, (3) whether the defendant asserted his right to a speedy trial, and (4) whether the defendant has suffered prejudice from any delay. State v. Bishop, 493 S.W.2d 81, 84 (Tenn. 1973). On appellate review, the trial court's determination in this regard is subject to review for abuse of discretion. See State v. Jefferson, 938 S.W.2d 1, 9 (Tenn. Crim. App. 1996).

The first factor, length of the delay, has generally been considered the triggering mechanism for consideration of the other factors. State v. Wood, 924 S.W.2d 342, 346 (Tenn. 1996). However, a lengthy delay, standing alone, will not support a finding of a speedy trial violation. See State v. Vance, 888 S.W.2d 776, 778 (Tenn. Crim. App. 1994); State v. Kolb, 755 S.W.2d 472, 474 (Tenn. Crim. App. 1988). Rather, the length of the delay must be balanced along with the remaining factors. Kolb, 755 S.W.2d at 474. In determining whether inquiry beyond the first factor is warranted, the United States Supreme Court endorsed a delay of one year or more as the point at which inquiry into the remaining Barker factors is mandated. Doggett v. United States, 505 U.S. 647, 654 at n.1, 657-58, 112 S. Ct. 2686, 2691

**4**

at n.1, 2694 (1992).

In the case at bar, the delay between the defendant's arrest and his trial was approximately 29 months. Thus, the appropriate course of action is consideration of all of the Barker factors. We are unable to complete that inquiry, however, because we have not been favored with the transcript of the hearing on the motion to dismiss and other relevant information. As such, we have no evidentiary basis for some of the facts asserted by Wakefield in support of his argument. The record contains no evidence regarding the reason for the delay. Similarly, the record does not contain the motion for a speedy trial that Wakefield alleges he made pro se, although the record does contain his counseled motion to dismiss based on the speedy trial issue, which was made approximately 19 months after his arrest. At most, the motion to dismiss may be viewed as a demand for a speedy trial as of the date of its filing. Finally, the record contains no evidence to support Wakefield's bald assertion that the delay hindered his defense because the alleged tape of the 911 call in which the victims described their attackers was erased during the delay.[1] Without a sufficient factual basis upon which to base a determination, we are hindered in our ability to consider the issue. See Tenn. R. App. P. 24(b); State v. Jack D. Williams, 01C01-9505-CR-00146, slip op. at 6-7 (Tenn. Crim. App., Jackson, Nov. 12, 1996).

Nevertheless, we have considered Wakefield's allegations, and even if the trial court found all of the defendant's assertions to be true, it nevertheless reached the proper conclusion upon weighing of the four Barker considerations.

---

[1]The victims' testimony was conflicting as to whether any descriptions were ever given over the telephone. In any event, no evidence of record supports Wakefield's assertion that any tape made of such a conversation, assuming it took place, was recorded and that the tape was erased during the delay in his reaching trial.

First, the period between Wakefield's arrest and trial strikes us as unduly protracted given the comparatively uncomplicated nature of the case. Second, however, there is no evidence the state purposefully caused the delay. There is some indication the defendant may have been responsible for at least part of the delay by requesting a continuance. We decline to find against the state on this factor. Third, Wakefield claims to have filed a pro se motion for a speedy trial on March 22, 1994. This militates in his favor. Fourth, we fail to find merit in Wakefield's allegation he suffered prejudice as a result of the delay because his counsel was unable to effectively cross-examine the victims about their descriptions of their assailants due to the erasure of the tape of the 911 call. Nothing in the record indicates that any such tape contained descriptions varying from those given by the victims at trial. If the record can be said to indicate anything, it is the contrary. Officer Bryan Brooks testified about the descriptions the victims gave of the suspects when he responded to the scene. Those descriptions are generally consistent with the descriptions given by the victims at trial. Officer Brooks responded mere minutes after the 911 call was made. It stands to reason that any descriptions given by the victims over such a short period of time would not differ substantially.[2] Absent evidence which points to the existence of some actual ground for cross-examination of the victims on this point, we decline to resolve this issue favorably for the defendant. On balance, we conclude that the trial court did not abuse its discretion in determining that the defendant failed to make out a speedy trial violation. This issue lacks merit.

II

In his second issue, Wakefield claims he was denied the right to confront a witness and a fair trial by the trial court's admission of his co-defendant's sworn testimony from the co-defendant's plea submission hearing. This evidence

_____

[2]It bears emphasizing that the victims disagree whether any descriptions were even given during the 911 call.

was admitted for purposes of impeachment when the co-defendant took the stand and claimed to have lost his memory of the relevant events. In an argument bereft of citation to authority, see Tenn. R. App. P. 27(b), the state defends the admission of this evidence as a prior inconsistent statement which met with no objection at trial.[3]  Further, the state points out, the defendant was not denied the right of confrontation because defense counsel cross-examined Wakefield's co-defendant about his professed lack of memory and his prior testimony.

The Sixth Amendment of the United States Constitution guarantees a defendant the right to confront witnesses against him at trial. Similarly, article I, section 9 of the Tennessee Constitution and Code section 40-17-105 guarantee a defendant's right to meet the witnesses face-to-face. Essentially, the purpose of the Confrontation Clause is to protect the defendant's right of cross-examination. Tennessee v. Street, 471 U.S. 409, 414, 105 S. Ct. 2078, 2082 (1985) (citations omitted). Where a defendant is unable to cross-examine a hearsay declarant about his or her statement which is admitted for substantive purposes at the defendant's trial, such admission runs afoul of the Confrontation Clause. Bruton v. United States, 391 U.S. 123, 88 S. Ct. 1620 (1968).

In the case at bar, a witness who the state alleged was Wakefield's juvenile partner in crime[4] was called by the state. He testified that due to past drug use and stress, he had no recollection of his or the defendant's involvement in the

---

[3]The state's assertion that the defense did not object to admission of the co-defendant's prior testimony is only partially correct.  There was no contemporaneous objection; however, after the witness testified and the tape was played for the jury, defense counsel made a motion to strike, which the trial court denied.  Due to the constitutional magnitude of the alleged error, we decline in this instance to accept the state's invitation to find the issue pretermitted based on the defendant's failure to interpose a timely objection.

[4]The witness testified he was 19 years old on the date of trial, the trial taking place well over two years after the offense.

7

robbery and attempted robbery of the victims on July 11, 1993. He likewise claimed to have no memory of entering his guilty plea and testifying about committing the crimes with the defendant. We gather from the record that this professed loss of memory was surprising for both the state and the defense. We further glean from the record the witness's testimony about his lack of memory was generally considered incredible by the parties and the court. The state questioned the witness about his entry of a guilty plea for the crimes, and specifically about his admissions under oath about the details of the crimes, those details including Wakefield's involvement as the other robber. The witness steadfastly maintained his claim of lost memory. The defense was likewise unable to shake the witness's position on cross-examination. The court allowed the state to play a tape of the guilty plea hearing in which the witness recalled the crimes in detail.

We begin our analysis with the admissibility of the tape's contents under the Rules of Evidence. Rule 613 provides for admission of a witness's prior inconsistent statement. Tenn. R. Evid. 613(b). Such statements are admissible to impeach the witness/declarant. See Tenn. R. Evid. 613, Advisory Comm'n Comment. In the case at bar, the witness claimed to have no memory of committing the crimes with the defendant. Likewise, he claimed to have no memory of entering his guilty plea and giving testimony at the plea hearing. Under the Rules of Evidence, the tape was properly admitted as a prior inconsistent statement for the non-hearsay purpose of impeaching the witness's claim of lost memory.

The question that remains is whether the evidence, though otherwise admissible, should have been excluded because it violated the defendant's right to confront adverse witnesses. We hold it should not have been excluded. The tape was offered as evidence to assist the jury in determining whether the witness' testimony was credible. The witness was thoroughly cross-examined about the

**8**

tape. Simply stated, the defendant was not denied the right to confront the witness. See Street, 471 U.S. at 414, 105 S. Ct. at 2081-82; State v. George Harless, 03C01-9203-CR-00105, slip op. at 6-9 (Tenn. Crim. App., Knoxville, Aug. 11, 1993), perm app. denied (Tenn. 1993); Jimmy Don Spangler v. State, No Number, (Tenn. Crim. App., Knoxville, Apr. 2, 1987), perm. app. denied (Tenn. 1987); accord United States v. Shoupe, 548 F.2d 636, 643 (6th Cir. 1977) (trial court would have been justified in allowing limited impeachment of witness by use of prior inconsistent statement given to government agent where witness's claim of selective memory was incredible). Accordingly, we find this issue lacking in merit.

## III

In his third issue, Wakefield claims

The trial court erred as a matter of law in denying defendant's motion of acquittal made at the close of the state's proof where the evidence of identification of the defendant was based upon an impermissible show-up conducted by the police and not based upon an independent recollection of the assailants who confronted the victims on the night the offense occurred.

The state considers the issue to be one of sufficiency of the evidence. After reflecting on the wording of Wakefield's issue and his accompanying argument, we are inclined to agree with the state that Wakefield's attack is to the sufficiency of the convicting evidence, particularly the identification of the defendant as one of the perpetrators of the crime and not to the legality of the show-up procedure.[5]

When an accused challenges the sufficiency of the evidence, an

---

[5]The record does not reflect that the defendant made a pre-trial motion to suppress the show-up identification of the defendant which he now claims was "impermissible." See Tenn. R. Crim. P. 12(b)(3), (f) (motion to suppress evidence must be made before trial or it will be treated as waived). We are not unmindful that the defendant has now framed his issue in a way in which we are asked to consider the merits of an otherwise waived issue as a component of the question presented. In light of Rule 12(b)(3), (f), we decline to consider, per se, the asserted impermissibility of the pre-trial identification procedure.

appellate court's standard of review is whether, after considering the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. Jackson v. Virginia, 443 U.S. 307, 324, 99 S. Ct. 2781, 2791-92 (1979); State v. Duncan, 698 S.W.2d 63, 67 (Tenn. 1985); Tenn. R. App. P. 13(e). This rule applies to findings of guilt based upon direct evidence, circumstantial evidence, or a combination of direct and circumstantial evidence. State v. Dykes, 803 S.W.2d 250, 253 (Tenn. Crim. App. 1990).

In determining the sufficiency of the evidence, this court should not reweigh or reevaluate the evidence. State v. Matthews, 805 S.W.2d 776, 779 (Tenn. Crim. App. 1990). Questions concerning the credibility of the witnesses, the weight and value of the evidence, as well as all factual issues raised by the evidence are resolved by the trier of fact. State v. Cabbage, 571 S.W.2d 832, 835 (Tenn. 1978). Nor may this court substitute its inferences for those drawn by the trier of fact from the evidence. Liakas v. State, 199 Tenn. 298, 305, 286 S.W.2d 856, 859 (1956); Farmer v. State, 574 S.W.2d 49, 51 (Tenn. Crim. App. 1978). On the contrary, this court must afford the State of Tennessee the strongest legitimate view of the evidence contained in the record as well as all reasonable and legitimate inferences which may be drawn from the evidence. Cabbage, 571 S.W.2d at 835.

The victims' in-court identifications, one unequivocal and the other somewhat tentative, support the defendant's convictions. In addition to the identifications, the record likewise reflects that Wakefield was apprehended in the area of the crimes shortly after their occurrence. Both he and one of his companions matched the victims' preliminary descriptions of the robbers. The vehicle in which the defendant was a passenger contained the weapons used in the crime and bandanas like those worn by the robbers. See State v. Pappas, 754

**10**

S.W.2d 620 (Tenn. Crim. App. 1987); <u>Wadley v. State</u>, 634 S.W.2d 658 (Tenn. Crim. App. 1982).

We conclude that the eyewitness identifications of Wakefield, buttressed by other circumstantial evidence of his guilt, overwhelmingly support his convictions of the crimes of aggravated robbery and attempted aggravated robbery of the victims.

Finding all of the defendant's issues lacking in merit, we affirm the judgment of the trial court.

_____
CURWOOD WITT, JUDGE

CONCUR:

_____
GARY R. WADE, JUDGE


_____
THOMAS T. WOODALL, JUDGE