IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT JACKSON
Assigned on Briefs May 2, 2006

## STATE OF TENNESSEE v. KEUSI YAMBA DONALD

**Direct Appeal from the Circuit Court for Weakley County**
**No. CR13-2004     William B. Acree, Judge**

--------

**No. W2005-01524-CCA-R3-CD  - Filed November 7, 2006**

--------

Following a jury trial, Defendant, Keusi Yamba Donald, was convicted of possession with intent to sell or deliver 26 grams or more of cocaine, a Class B felony, and possession with intent to sell or deliver more not less than one-half (½) ounce nor more than ten (10) pounds of marijuana, a Class E felony. The trial court sentenced Defendant to serve sixteen years in the Department of Correction as a Range II, multiple offender for his conviction of possession with intent to sell or deliver cocaine, and six years in the Department of Correction as a Range III, career offender for his conviction of possession with intent to sell or deliver marijuana, with the sentences to be served concurrently. On appeal, Defendant argues that (1) the trial court erred in failing to grant his motion to suppress evidence, (2) the evidence was insufficient to support his convictions, and (3) his sentence of sixteen years was excessive. After a thorough review, the judgments of the trial court are affirmed.

**Tenn. R. App. P. 3 Appeal as of Right; Judgments of the Circuit Court Affirmed**

THOMAS T. WOODALL, J., delivered the opinion of the court, in which JOHN EVERETT WILLIAMS and J.C. MCLIN, JJ. joined.

Joseph P. Atnip, District Public Defender; and Colin Johnson, Assistant Public Defender, for the appellant, Keusi Yamba Donald.

Paul G. Summers, Attorney General and Reporter; David Coenen, Assistant Attorney General; Thomas A. Thomas, District Attorney General; and Kevin McAlpin, Assistant District Attorney General, for the appellee, the State of Tennessee.

### OPINION

### I. Background

On December 12, 2003, at approximately eleven o'clock p.m., Officer Jason Arant of the Martin Police Department was on patrol "running radar" for cars traveling up and down Gardner-Hyndsver Road. During this patrol, Officer Arant stopped Defendant's van for speeding. Defendant

was traveling fifty-seven miles-per-hour in a forty miles-per-hour zone. The van had a temporary license plate, so it was not registered with the Department of Motor Vehicles, but Defendant said that he was the owner and had purchased the van "a couple of weeks prior." Officer Arant subsequently discovered that Defendant was driving the van with a suspended driver's license. There was one passenger, Johnson Davis, in the vehicle with Defendant. Mr. Davis did not have a driver's license.

Officer Tommy Erwin, also with the Martin Police Department, responded to Officer Arant's call for back-up. When Officer Erwin arrived at the scene, Officer Arant advised him that he thought he detected an odor of marijuana coming from the car. Officer Erwin approached the passenger side of the van to try to either substantiate or allay Officer Arant's suspicions. From the passenger's side of the van, the odor was much stronger and both officers were certain they smelled marijuana.

The officers advised Defendant that they were going to let him go with a warning for his traffic violation, but asked if they could search his vehicle before he left. Defendant said that he did not mind if the officers searched, but requested that they wait until his friends arrived to pick him up so that they could act as witnesses. The officers initially found a partially burnt marijuana cigarette in an ashtray. The officers then "pulled back out" and Officer Erwin ran his drug canine around the perimeter of the car. The canine alerted to the vehicle, entered the vehicle, and "latched" on to a blue duffle bag located in the back of the van. The officers removed the bag from the van and found two "bricks" of marijuana and four individually packed bags of cocaine inside the duffle. The plastic bags containing the drugs were not tested for fingerprints. Defendant would not disclose the origin of the drugs because "if he provided that type of information he would be killed."

In addition to the drugs, the duffle bag contained numerous business cards with Defendant's name and business information on them and a Western Union receipt for a wire transfer in the amount of fifty dollars with Defendant's name on it. There was also a ledger in the bag, which was essentially a piece of paper containing dollar amounts and initials. The numbers totaled seven thousand dollars.

Dana Rose, a forensic investigator with the Tennessee Bureau of Investigation ("T.B.I."), provided expert testimony regarding her analysis of the packed substances removed from Defendant's van. Ms. Rose testified that Defendant was carrying 124.2 grams of cocaine and 578.7 grams of marijuana.

Prior to trial, Defendant filed a motion to suppress the evidence obtained from the search of his car on the grounds that the officers did not have probable cause to conduct the search. At the motion to suppress hearing, Officer Arant testified that prior to the search of Defendant's automobile, he gave Defendant a verbal warning on the motor vehicle violations and told him that he was free to go and to call some friends to come get him at the scene. Officer Arant did not allow Defendant to drive the van from the scene because his driver's license was suspended. He said that although he did not say so to Defendant, what he meant was that Defendant was free to go assuming there was no other illegality discovered pursuant to the stop.

When Officer Arant asked for permission to search Defendant's van, Defendant agreed to the search, but asked that the officers wait to conduct the search until his friends arrived to pick him up so that they could watch. Officer Arant said he did not think this was a condition of the consent to search. On cross-examination however, Officer Arant admitted that a defendant can give conditional consent and Defendant's request essentially meant "don't search my car until my friends get here," which constituted a condition. He further admitted that Defendant told him twice that he did not want the officers to search the car until his friends arrived. Officer Arant did not advise Defendant of his right to refuse the search.

Officer Arant said that there was a consensus between the officers that the odor of marijuana was stronger on the passenger side of the van, but generally the smell was not "very strong" at all and could have been lingering from a prior occasion. Officer Arant admitted that the officers were not sure there was marijuana in the van, but they "went ahead and searched" despite Defendant's request that they wait for his friends to arrive. Officer Arant acknowledged that his incident report made no mention of the smell of marijuana and in fact said only "requested and was granted consent to search." He stated that his view of the matter at that time was that the search was based on Defendant's consent.

Officer Erwin testified that as the back-up officer he was monitoring the suspects in the van in order ensure Officer Arant's safety. He said that when the passenger's side window was down and the wind blew through from the other side, he smelled a "faint odor" of marijuana. He recognized the smell based on his experience and training. He alerted Officer Arant to what he smelled and it was at this point that they agreed the smell was marijuana. Officer Erwin stated that he did not see smoke in the car and the odor "could have been from where they had just left a residence, prior, smoking marijuana."

The van was initially searched by Officer Arant who discovered a "roach" in the front of the van. Following discovery of the "roach," Defendant and Mr. Davis were taken into custody and placed in the back of the patrol car. It was at this point that Officer Arant asked Officer Erwin to run his drug canine around the van. The dog then alerted to a blue duffle bag in the back of the van which contained the drugs.

The trial judge denied the motion to suppress, finding that although consent to search was not given, the officers had probable cause to search the vehicle because the smell of marijuana rendered the search valid.

## II. Sentencing Hearing

Officer Benny Roberts of the Department of Correction completed Defendant's pre-sentence report. Mr. Roberts testified that the Tennessee Offender Management Information Systems (TOMIS) report indicated that Defendant had been convicted of a Class D felony in Shelby County on August 15, 2000, for possession of a Schedule VI drug in the amount of 10 pounds to 70 pounds. The pre-sentence report also indicated that Defendant had an extensive criminal history including convictions

for possession of a Schedule VI drug in the amount of 10 pounds to 70 pounds in the Circuit Court for Obion County, January, 2002; possession of a Schedule VI controlled substance not less than ½ ounce in the Circuit Court of Obion County, September 2001; driving with a suspended license in the Circuit Court for Obion County, September 2000; failure to appear in the Circuit Court of Weakley County, October 1998; Sale of a Controlled Substance in the Circuit Court of Weakley County, January 2001; aggravated assault in the Circuit Court of Weakley County, April 1997; possession of a controlled substance with intent to sell or deliver in the Circuit Court of Weakley County, October 1996. Defendant was also charged with the sale of a controlled substance in the Circuit Court for Weakley County in May 1995. This last charge was originally disposed of through pre-trial diversion. Defendant subsequently violated the conditions of the pre-trial diversion and was convicted of the offense.

Mr. Roberts testified that Defendant graduated from high school; attended but did not graduate from the University of Tennessee at Martin; had no apparent mental or physical problems; had three brothers and a daughter; and had a history of temporary jobs and various other types of employment.

Defendant testified that he had a twelve-year-old daughter who lived with her mother in Norfolk, Virginia. He said that he visited with his daughter in the summer when she was out of school on vacation. Defendant stated that he graduated from high school and attended the University of Tennessee at Martin from 1991 until 1995 when he was placed on disciplinary suspension. He attended the university again from 1997-1998 and was again placed on disciplinary suspension. He said that he lacked approximately 50 hours of class credit in order to graduate from college.

Defendant said that at the time of his arrest he was self-employed as a marketing and music promoter for a music group. He said that he also worked part-time arranging performances for the music group at different venues. On the night he was arrested, he had been working for the music group at a club in Union City. Defendant said in the past he worked for Spikener, Incorporated, which was his longest term of employment. He said that he had also worked in sales and in the restaurant business.

With respect to his criminal history, Defendant said that his first arrest was for possession of marijuana for which he received a pre-trial diversion and probation in 1995. He said that he was subsequently arrested in Shelby County on marijuana charges and Weakley County on aggravated assault charges. Both of these arrests occurred while Defendant was suspended from college.

**III. Motion to Suppress**

Defendant first contends that the trial court erred in denying his motion to suppress the evidence found as a result of the search of his van. Our standard of review for a trial court's findings of fact and conclusions of law on a motion to suppress evidence is set forth in *State v. Odom*, 928 S.W.2d 18 (Tenn. 1996). Under this standard, "a trial court's findings of fact in a suppression hearing will be upheld unless the evidence preponderates otherwise." *Id*. at 23. As is customary, "the prevailing party in the trial court is afforded the 'strongest legitimate view of the evidence and all

reasonable and legitimate inferences that may be drawn from that evidence.'" *State v. Carter*, 16 S.W.3d 762, 765 (Tenn. 2000) (quoting *State v. Keith,* 978 S.W.2d 861, 864 (Tenn. 1998)). Nevertheless, this Court reviews *de novo* the trial court's application of the law to the facts, without according any presumption of correctness to those conclusions. *See State v. Walton*, 41 S.W.3d 775, 781 (Tenn. 2001); *State v. Crutcher*, 989 S.W.2d 295, 299 (Tenn. 1999). Once the trial court has ruled on a suppression motion, our standard of appellate review requires acceptance of the trial court's findings regarding "[q]uestions of credibility of the witnesses, the weight and value of the evidence, and resolution of conflicts in the evidence," unless the evidence preponderates against the findings. *Odom*, 928 S.W.2d at 23; *State v. Cothran*, 115 S.W.3d 513, 519 (Tenn. Crim. App. 2003).

Both the Fourth Amendment to the United States Constitution and Article I, section 7 of the Tennessee Constitution protect citizens against unreasonable searches and seizures conducted by law enforcement officers. Under both the United States and Tennessee Constitutions, courts have generally defined unreasonable searches and seizures as those conducted without a warrant, a definition subject to a few carefully defined exceptions. *See State v. Keith*, 978 S.W.2d at 865; *State v. Yeargan*, 958 S.W.2d 626, 629 (Tenn. 1997); *see also Maryland v. Dyson*, 527 U.S. 465, 466-467, 119 S. Ct. 2013, 2014, 144 L. Ed. 2d 442 (1999). The constitutional prohibitions against unreasonable searches and seizures and the accompanying warrant requirement encompass stops and searches of automobiles. *Keith*, 978 S.W.2d at 865*; see also State v. Pulley,* 863 S.W.2d 29, 30 (Tenn. 1993). Accordingly, when the State seeks to introduce in a criminal trial evidence obtained as a result of the warrantless stop and search of an automobile, the State carries the burden of demonstrating by a preponderance of the evidence the applicability of an exception to the warrant requirement. *Keith*, 978 S.W.2d at 865; *Yeargan*, 958 S.W.2d at 629.

In the case *sub judice*, Defendant concedes that the initial stop of his van was lawful. He argues however, that the smell of marijuana was not strong enough to justify probable cause to search the van. He points out that the officers, by their own admission, thought that the search was based on Defendant's consent to search the vehicle rather than the smell of marijuana emanating from the van. He also notes that the officers testified that they were not certain whether the odor was coming from the van, or whether the suspects themselves smelled of marijuana because they had previously been somewhere that marijuana was being smoked. He argues that if the officers were uncertain, then it was error for the trial court to find that an objectively reasonable person could conclude that the officers had probable cause to search the vehicle.

The trial court found as follows:

The Court finds that the consent was not voluntarily [sic] given. The officers both testified that the defendant said, "I wouldn't mind if you wait" - - excuse me. The evidence reflects - - the undisputed evidence reflects that the defendant said, "I wouldn't mind, if you waited until my friends got here so they can watch." The search was made before the friends got there. The officers did not have consent to search the vehicle.

With respect to the drug dog, the drug dog was used after they had been detained because of the marijuana. The Court finds that was not a proper basis for the search. Had the drug dog been taken out of the car after the officers had initially smelled marijuana, I think it would have been fine. Whatever the dog found would have been proper. But that's not what happened.

The third ground is whether or not the smell of marijuana established probable cause for searching the vehicle. The defendant argues that the officers didn't think they had probable cause. If they did, they would have searched the vehicle at that point, and furthermore, they would have put that in the incident report. I think the defendants are right about that, that the officer did not think they had probable cause, but that does not mean that they did not.

The Court in this case finds that the officers had probable cause to search the vehicle because of the smell of marijuana, even though the officers may not have though that they did.

We agree with the trial court that the officers had probable cause to search Defendant's van. It is not significant that the police did not subjectively believe they had probable cause to search the van until after Defendant consented to the search. "The controlling issue in matters of this kind is not whether an officer subjectively thinks he has probable cause, but rather whether the facts and circumstances within the officer's knowledge at the time of the [search] actually constitute probable cause." *See State v. Browning*, 666 S.W.2d 80, 85 (Tenn. Crim. App. 1983) (citing *Wadley v. State*, 634 S.W.2d 658, 663 (Tenn. Crim. App. 1982); *State v. Duer*, 616 S.W.2d 614, 616 (Tenn. Crim. App.1981)).

Applying this test to the facts of this case, we conclude that the officers had probable cause to search Defendant's van based on the smell of marijuana. The trial court clearly accredited the testimony of Officers Arant and Erwin that they smelled marijuana, however faintly, emanating from the vehicle. It is well established in Tennessee that the odor of an illegal substance, either alone or in conjunction with other facts and circumstances, can provide sufficient probable cause, depending on the situation, for either a warrantless search or the issuance of a search warrant. *See State v. Hughes*, 544 S.W.2d 99, 101 (Tenn. 1976) (holding that the odor of marijuana emanating from a vehicle constituted probable cause for a police officer to believe that the vehicle contained contraband marijuana); *Hart v. State*, 568 S.W.2d 295, 296 (Tenn. Crim. App. 1978) (holding that "officers' search of the vehicle was proper, based upon the independent probable cause ground of the marijuana odor" coming from the vehicle); *Hicks v. State*, 534 S.W.2d 872, 873-74 (Tenn. Crim. App. 1975) (stating that "[t]he principal question presented here is whether or not the smell of marijuana emanating from the defendant's car furnished probable cause to enable an officer, who had stopped the vehicle for a traffic offense, to search the vehicle. We hold that it did."); *State v. Paul Anthony Wright*, No. W2001-02574-CCA-R3-CD, 2003 WL 1860526, at *9-10 (Tenn. Crim. App., at Jackson, Apr. 7, 2003) (no Tenn. R. App. P. 11 application filed) (holding that a search warrant affidavit reciting, *inter alia*, the affiant's experience, training, and observation of both "the distinct odors

associated with the manufactor [sic] of methamphetamine" and other items associated with such a manufacturing operation near the defendant's house and in his vehicle was sufficient to establish probable cause for the issuance of a search warrant of defendant's home); *State v. Danny Davidson*, No. W2001-00118-CCA-R3-CD, 2002 WL 1482720, at *1 (Tenn. Crim. App., at Jackson, Feb. 26, 2002), (a sufficiency of the evidence case in which a valid search warrant of a home was issued based on an officer's recognition of a "strong chemical odor" as "that from a possible methamphetamine lab"), *perm. to app. denied* (Tenn. July 8, 2002); *State v. Reginald Allan Gillespie,* No. 03C01-9706-CR-00222, 1999 WL 391560, at *3 (Tenn. Crim. App., at Knoxville, June 16, 1999), *perm. to app. denied* (Tenn. July 16, 1999)(quoting *State v. Henning,* 975 S.W.2d 290, 294 (Tenn. 1998)) (holding that the detection of a strong odor of marijuana around an individual gives a law enforcement officer probable cause for a warrantless search, which is a "reasonable ground for suspicion, supported by circumstances indicative of an illegal act," together with the existence of exigent circumstances). We conclude that the evidence does not preponderate against the trial court's finding that the officers smelled marijuana. Accordingly, the search of Defendant's van was a valid, legal search, based upon probable cause. Defendant is not entitled to relief on this issue.

## IV. Sufficiency of the Evidence

Defendant next argues that the evidence was insufficient to convict him of one count of possession with intent to deliver more than 0.5 ounces but less than 10 pounds of marijuana and one count of possession with intent to deliver 26 grams or more of cocaine. Defendant asserts that because the bags containing the drugs were not fingerprinted, there is a lack of proof beyond a reasonable doubt that Defendant, rather than his passenger Johnson Davis, was the one who placed the drugs in the duffle bag. Defendant contends that although the drugs were found in his duffle bag with his other belongings, Mr. Davis could just as easily have placed the drugs in the duffle bag. He points out that Mr. Davis admitted to being a convicted drug dealer, serving an eight-year sentence on possession charges, and having prior convictions for both cocaine and weapons charges.

When the sufficiency of the evidence is challenged, the relevant question is whether, after reviewing the evidence in the light most favorable to the state, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. Tenn. R. App. P. 13(e); *State v. Williams*, 657 S.W.2d 405, 410 (Tenn. 1983). On appeal, the State is entitled to the strongest legitimate view of the evidence and all reasonable inferences which might be drawn therefrom. *State v. Cabbage*, 571 S.W.2d 832, 835 (Tenn. 1978). Questions concerning the credibility of the witnesses, the weight and value of the evidence, as well as all factual issues raised by the evidence are resolved by the trier of fact. *Liakas v. State*, 286 S.W.2d 856, 859 (Tenn. 1956). Because a verdict of guilt against a defendant removes the presumption of innocence and raises a presumption of guilt, the convicted criminal defendant bears the burden of showing that the evidence was legally insufficient to sustain a guilty verdict. *State v. Evans*, 838 S.W.2d 185, 191 (Tenn. 1992).

It is a criminal offense for a person knowingly to "[p]ossess a controlled substance with intent to manufacture, deliver or sell such controlled substance." *See* T.C.A. § 39-17-417(a)(4) (2003). A person is guilty of possession with intent to sell or deliver cocaine, a Class B felony, with a maximum

$200,000 fine, "if the amount involved is 26 grams or more of any substance containing cocaine." T.C.A. § 39-17-417(i)(10). A person is guilty of possession with intent to sell or deliver marijuana, a Class E felony, if the amount involved is "not less than one-half (1/2) ounce (14.175 grams) nor more than ten pounds (10 lbs.) (4535 grams) of marijuana." T.C.A. § 39-17-417(g)(1). Tennessee Code Annotated section 39-17-419 states in part, "[i]t may be inferred from the amount of a controlled substance or substances possessed by an offender, along with other relevant facts surrounding the arrest, that the controlled substance or substances were possessed with the purpose of selling or otherwise dispensing." With respect to this inference, our review is only to consider whether "under the facts of the case, there is no rational way the trier [of fact] could make the connection permitted by the inference" beyond a reasonable doubt. *State v. Hill*, No. M2005-01126-CCA-R3-CD, 2006 WL 1374668, at *6 (Tenn. Crim. App., at Nashville, May 17, 2006) (no Tenn. R. App. P. 11 application filed) (citing *County Court of Ulster County v. Allen*, 442 U.S. 140, 157, 99 S. Ct. 2213, 2225 (1979)). "In other words, even though circumstantial evidence is needed for one element, the standard for evidence sufficiency remains the same." *Hill*, 2006 WL 1374668, at *6. In interpreting Tennessee Code Annotated section 39-17-419, this court has concluded that the plain and ordinary language of the statute "permits the jury to draw an inference of intent to sell or deliver when the amount of the controlled substance and other relevant facts surrounding the arrest are considered *together*." *Id.* (citing *State v. John Fitzgerald Belew,* No. W2004-01456-CCA-R3-CD, 2005 WL 885106, at *6 (Tenn. Crim. App., at Jackson, Apr. 18, 2005) (no Tenn. R. App. P. 11 application filed)).

In the present case, the proof showed that Defendant was driving a van which he owned when he was stopped for a traffic violation. The stop resulted in a search which subsequently revealed Defendant was traveling with drugs in the van. The drugs were found inside a duffle bag located in the rear of the van. The duffle bag also belonged to Defendant, as did various other items inside the bag, including Defendant's receipts and business cards, and a ledger containing initials and dollar amounts totaling $7000.00. Expert testimony established that the duffle bag contained 124.2 grams of cocaine and 578.7 grams of marijuana. Mr. Davis, the only passenger in Defendant's van, testified that he had no knowledge of the drugs and they did not belong to him, although he admitted prior drug-related convictions. The arresting officers testified that all evidence resulting from their investigations indicated that Defendant was the owner of the drugs and that Mr. Davis had no involvement with the drugs. As evident from its verdict, the jury chose to accredit the testimony of the State's witnesses. We agree with the jury and conclude that the evidence was sufficient for a rational trier of fact to find beyond a reasonable doubt that Defendant was guilty of possessing both marijuana and cocaine with intent to sell or deliver. Defendant is not entitled to relief on this issue.

**V. Sentencing**

Finally, Defendant asserts that the trial court erred in imposing a sentence of sixteen years, arguing that the sentence was excessive in light of his "prospects for rehabilitation." Defendant cites his "good education" and his entrepreneurial background as evidence of his ability to be rehabilitated. This court's review of a challenged sentence is a *de novo* review of the record with a presumption that the trial court's determinations are correct. T.C.A. § 40-35-401(d). This presumption of correctness

is conditioned upon the affirmative showing in the record that the trial court considered the sentencing principles and all relevant facts and circumstances. *State v. Pettus,* 986 S.W.2d 540, 543-44 (Tenn. 1999). In this regard, for the purpose of meaningful appellate review, the trial court must place on the record its reasons for arriving at the final sentencing decision, identify the mitigating and enhancement factors found, state the specific facts supporting each enhancement factor found, and articulate how the mitigating and enhancement factors have been evaluated and balanced in determining the sentence. T.C.A. § 40-35-210(f) (2003); *State v. Martin*, 146 S.W.3d 64, 69 (Tenn. 2004). In conducting a *de novo* review, we must also consider (1) the evidence, if any, received at the trial and the sentencing hearing, (2) the pre-sentence report, (3) the principles of sentencing and arguments as to sentencing alternatives, (4) the nature and characteristics of the criminal conduct, (5) any mitigating or statutory enhancement factors, (6) any statement that the defendant made on his own behalf, and (7) the potential for rehabilitation or treatment. T.C.A. §§ 40-35-102, -103, -210 (2003); *see State v. Ashby*, 823 S.W.2d 166, 168 (Tenn. 1991); *State v. Moss*, 727 S.W.2d 229, 236-37 (Tenn. 1986). However, if the record shows that the trial court failed to consider the sentencing principles and all relevant facts and circumstances, then review of the challenged sentence is purely *de novo* without the presumption of correctness. *State v. Ashby*, 823 S.W.2d at 169. On appeal, the party challenging the sentence imposed by the trial court has the burden of establishing that the sentence is erroneous. T.C.A. § 40-35-401(d), Sentencing Commission Comments.

Relying on *Blakely v. Washington*, 542 U.S. 296, 124 S. Ct. 2531 (2004), the trial court found no mitigating factors and limited its consideration of enhancement factors to enhancement factor number 2, Defendant's extensive criminal history. T.C.A. § 40-35-114(2) (2003) (current version at T.C.A. § 40-35-114(1) (Supp. 2005)). The trial court noted that under *Blakely*, "the Court cannot consider any other enhancing factor other than that enhancing factor. There would be enhancing factors which the Court would consider if we were not operating under that decision." In determining Defendant's sentence, the trial court also found a need for deterrence in addition to Defendant's extensive criminal history. Specifically, the trial court stated:

> The Court finds there is a need for deterrence in this case. First of all, the Court notes that drug offenses and drug related offenses are increasingly present in this community, and in this jurisdiction, and probably account for some 70 to 80 percent of the crime committed in this area.
>
> Secondly, the Court finds the defendant's crime was a result of intentional and knowing conduct, and was otherwise motivated by a desire to profit or gain from criminal behavior.
>
> Again the Court notes that there was 26 grams [sic] of cocaine which was found in the defendant's possession. This has a significant street value.
>
> This amount and this value certainly suggests that this cocaine was not used for his personal use, but rather to sell to other people.

And finally, the Court finds the defendant has previously engaged in criminal conduct of the same type such as this. So he has numerous drug offenses which I will address in just a moment.

The Court also finds that the punishment shall also be imposed to prevent crime and promote respect for the law by restraining defendants with a lengthy history of criminal conduct. Mr. Donald certainly has a lengthy history of criminal conduct.

On May 27, 1997, he was found guilty of sale of marijuana in this court.

On June 20th, 1997, there was another marijuana charge in this court.

There was an aggravated assault charge on June 20, 1997 in this court.

There was another drug charge, disposition date was January 5th, 2001, for drugs, in this court.

On that same date there was a failure to appear, in this court.

On January 29, 2002, there was another drug offense in Shelby County, and the Court notes that the Schedule VI drugs was from 10 to 70 pounds. That certainly is indicative of sale or possession of those drugs for resale.

He also had a driving with license suspended on March 9, 2001, in Obion County.

And another drug charge on March 9, 2001.

The court also notes that he has other matters, several misdemeanor convictions, receiving stolen firearms, and simple possession in Murray, Kentucky, simple possession in Milan, Tennessee, and possession of Schedule VI and drug paraphernalia in Manchester, Tennessee.

In short, Mr. Donald has an extremely lengthy history of criminal conduct.

The Court also notes that . . . the prior record re[flects] that he has not been successful in previous attempts at alternative sentencing.

And finally, the Court notes that he has had one prior failure to appear charge, and he has another one pending in this court, which will be disposed of in the very near future, all of which indicates that he is not a suitable candidate for any type of rehabilitation.

The trial court further stated that under Tennessee Code Annotated section 40-35-103, Defendant was not entitled to a statutory presumption of alternative sentencing. Moreover, the court denied alternative sentencing due to Defendant's extensive criminal history, the need for deterrence, and the fact that previous measures less restrictive than confinement had not resulted in Defendant's successful rehabilitation. T.C.A. § 40-35-103(1)(A)-(C).

The trial court's reliance on *Blakely*, while understandable, was subsequently rendered unnecessary. After Defendant's sentencing hearing was held, our supreme court decided *State v. Gomez*, 163 S.W.3d 632 (Tenn. 2005), in which the court concluded that "[t]he Reform Act [of Tennessee] authorizes a discretionary, non-mandatory sentencing procedure and requires trial judges to consider the principles of sentencing to engage in a qualitative analysis of enhancement and mitigating factors . . . all of which serve to guide trial judges in exercising their discretion to select an appropriate sentence within the range set by the Legislature." *Gomez*, 163 S.W.3d at 661. Upon the finding of even one enhancement factor, "the statute affords the judge discretion to choose an appropriate sentence anywhere within the statutory range." *Id*. at 659. The court went on to say that "[u]nder the Reform Act, the finding of an enhancement factor does not mandate an increased sentence. The Reform Act does not provide a system which requires or even allows judicial power to "infringe [ ] upon the province of the jury." *Blakely*, 124 S. Ct. at 2540. Thus, for these reasons, and in accordance with our duty to indulge every presumption in favor of the constitutionality of statutes-a duty which the dissent fails to discuss-we conclude that Tennessee's sentencing structure does not violate the Sixth Amendment." *State v. Gomez*, 163 S.W.3d at 661.

As previously stated, the trial court sentenced Defendant to sixteen years as a Range II, multiple offender for his Class B felony and six years as a Range III, career offender for his Class E felony, with the sentences to be served concurrently. The sentencing statute sets the sentence for a Range II, Class B felony at "not less than twelve (12) nor more than twenty (20) years." T.C.A. § 40-35-112(b)(2) (2003). For a Range III, Class E felony, the authorized term of imprisonment is "not less than four (4) nor more than six (6) years." T.C.A. § 40-35-112(c)(5) (2003). "A defendant who is found by the court beyond a reasonable doubt to be a career offender shall receive the maximum sentence within the applicable Range III." T.C.A. § 40-35-108(c) (2003).

Application of these sentencing guidelines reveals that Defendant's sentences were in accordance with the statutory range set forth by the Legislature. The record reflects that the trial court properly considered the sentencing principles as they existed at the time of sentencing as well as the specific factors applicable when deciding whether deterrence was present in the case and whether Defendant's incarceration was particularly suited to achieve that goal. Accordingly, under *Gomez*, the trial court did not err in sentencing Defendant to a term of sixteen years. Defendant is not entitled to relief on this issue.

**CONCLUSION**

For the foregoing reasons, the judgments of the trial court are affirmed.

_____

-11-

THOMAS T. WOODALL, JUDGE