IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT KNOXVILLE
July 22, 2003 Session

**STATE OF TENNESSEE v. MICHAEL D. MARTIN**

**Appeal from the Criminal Court for Sullivan County**
**No. S46,013      R. Jerry Beck, Judge**

**No. E2002-03005-CCA-R3-CD**
**January 28, 2004**

The defendant, Michael D. Martin, pled guilty in the Sullivan County Criminal Court to violating
a motor vehicle habitual offender order, a Class E felony. After a sentencing hearing, the trial court
sentenced the defendant as a Range II, multiple offender to four years in the Department of
Correction (DOC) and ruled that despite the general prohibition on probation contained in T.C.A.
§ 55-10-616(c) of the Motor Vehicle Habitual Offenders (MVHO) Act, trial courts can consider
probation for defendants who violate motor vehicle habitual offender orders. Nevertheless, the trial
court denied the defendant's request for probation. The defendant appeals, claiming that his sentence
is excessive and that he should have received full probation. We conclude that the defendant's
sentence should be reduced to three years. We conclude that the Criminal Sentencing Reform Act
of 1989 repealed by implication the MVHO Act's prohibition of probation in T.C.A. § 55-10-616(c).
However, we also conclude that the trial court erred in denying any form of alternative sentencing,
and we remand the case for the entry of an appropriate sentence.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court Reversed,**
**Case Remanded**

JOSEPH M. TIPTON, J., delivered the opinion of the court, in which NORMA MCGEE OGLE, J., joined.
GARY R. WADE, P.J., filed a concurring opinion.

George Todd East, Kingsport, Tennessee, for the appellant, Michael D. Martin.

Paul G. Summers, Attorney General and Reporter; Brent C. Cherry, Assistant Attorney General; H.
Greeley Wells, Jr., District Attorney General; and B. Todd Martin, Assistant District Attorney
General, for the appellee, State of Tennessee.

**OPINION**

This case relates to the defendant's arrest for violating a motor vehicle habitual offender
order on July 13, 2001. At the sentencing hearing, the defendant testified that on the day of his
arrest, he agreed to pull a float with his and his wife's pickup truck for the Fun Day Parade. He said
he drove the truck because he did not think anyone else could drive it while pulling the float. He

said the float was not moving when it was struck by another car traveling the wrong way down a one-way street. His driving status was discovered in the resulting accident investigation.

The defendant testified that before he got married in 1998, he had poor work habits and went to bars frequently but that he became a hard worker after his marriage. He said he had not driven since January 1998 except for the day of the parade. He said that a neighbor drove him to work each day and that his wife picked him up after work. He said he quit drinking heavily when he met his wife. He acknowledged that he wanted the trial court to grant him probation in order to continue working and supporting his family. On cross-examination, the defendant acknowledged he had two prior convictions for violating a motor vehicle habitual offender order.

Jeffrey Dale Bledsoe testified that he owned a used car dealership and body shop and that the defendant had worked there as the service manager for five years. He said the defendant had never been late to work and had never missed work without calling ahead of time. He said the defendant was never under the influence of drugs while at work. He said that the defendant was an important employee with many responsibilities and that he would have to close his business if the defendant was unable to work. He said that he never saw the defendant driving, that the defendant's wife picked the defendant up from work in the evenings, and that he did not know who brought the defendant to work. He said he would not be concerned if the defendant were placed on probation.

Gladys Jo Martin, the defendant's wife, testified that the defendant helped take care of her two children from a previous relationship. She said he went with the children to their basketball games and participated in her son's scout troop. She said that since their relationship began, the defendant had not had problems with alcohol or drugs. She said that on July 13, 2001, the defendant drove their truck in the parade because the person who originally agreed to drive it decided to play "one-pitch" ball instead. She said the defendant agreed to drive because he was too embarrassed to admit he did not have a driver's license. She said her two children were on the float while the defendant was driving. She said the defendant was a good husband and would not be a danger to the community if he received probation.

Roy Martin testified that he was the defendant's father and that before the defendant's marriage, the defendant was a risk to the community when he drove. He said that since the defendant's marriage, the defendant had changed. He said the defendant attended church, helped with the Boy Scouts, and worked hard at his job. He said he would not be concerned if the defendant were placed on probation.

The presentence report reflects that the defendant has thirteen prior convictions for driving-related offenses, including two 1998 felony convictions for violating a motor vehicle habitual offender order and six misdemeanor driving under the influence (DUI) convictions. The report states that he is a high school graduate and that he served in the Navy until he received an honorable discharge in 1983. According to the report, the defendant began drinking alcohol and smoking marijuana when he was in high school but no longer used marijuana and did not drink alcohol very

often. The report confirms that he has been employed by Mr. Bledsoe at Second Chance Auto Store Tires and Service as the shop manager for over four years.

Because of the defendant's prior DUI's, the trial court sentenced him to four years, giving great weight to enhancement factor (2), that the defendant had a prior history of criminal convictions or criminal behavior. See T.C.A. § 40-35-114(2). The trial court refused to apply the defendant's work history as a mitigating factor under T.C.A. § 40-35-113(13). The trial court also denied the defendant's request for probation based upon the defendant's prior criminal record and this court's holding in State v. Blackhurst, 70 S.W.3d 88 (Tenn. Crim. App. 2001).

## I. EXCESSIVE SENTENCE

The defendant contends that his four-year sentence is excessive. He claims that the trial court should not have applied enhancement factor (2). In addition, he contends that the trial court should have applied mitigating factor (11), that the defendant, "although guilty of the crime, committed the offense under such unusual circumstances that it is unlikely that a sustained intent to violate the law motivated the criminal conduct, and factor (13). See T.C.A. § 40-35-113(11), (13). The state argues that the trial court did not abuse its discretion in sentencing the defendant. We hold that the trial court erred by failing to apply mitigating factors (11) and (13) and that the defendant should receive a three-year sentence.

Appellate review of sentencing is de novo on the record with a presumption that the trial court's determinations are correct. T.C.A. § 40-35-401(d). As the Sentencing Commission Comments to this section note, the burden is now on the appealing party to show that the sentencing is improper. This means that if the trial court followed the statutory sentencing procedure, made findings of fact that are adequately supported in the record, and gave due consideration and proper weight to the factors and principles that are relevant to sentencing under the 1989 Sentencing Act, we may not disturb the sentence even if a different result were preferred. State v. Fletcher, 805 S.W.2d 785, 789 (Tenn. Crim. App. 1991).

However, "the presumption of correctness which accompanies the trial court's action is conditioned upon the affirmative showing in the record that the trial court considered the sentencing principles and all relevant facts and circumstances." State v. Ashby, 823 S.W.2d 166, 169 (Tenn. 1991). In this respect, for the purpose of meaningful appellate review,

> the trial court must place on the record its reasons for arriving at the final sentencing decision, identify the mitigating and enhancement factors found, state the specific facts supporting each enhancement factor found, and articulate how the mitigating and enhancement factors have been evaluated and balanced in determining the sentence. T.C.A. § 40-35-210(f) (1990).

State v. Jones, 883 S.W.2d 597, 599 (Tenn. 1994).

Also, in conducting a de novo review, we must consider (1) the evidence, if any, received at the trial and sentencing hearing, (2) the presentence report, (3) the principles of sentencing and arguments as to sentencing alternatives, (4) the nature and characteristics of the criminal conduct, (5) any mitigating or statutory enhancement factors, (6) any statement that the defendant made on his own behalf, and (7) the potential for rehabilitation or treatment. T.C.A. §§ 40-35-102, -103, -210; see Ashby, 823 S.W.2d at 168; State v. Moss, 727 S.W.2d 229, 236-37 (Tenn. 1986).

The range of punishment for a Range II defendant convicted of a Class E felony is two to four years. T.C.A. § 40-35-112(b)(5). The sentence to be imposed for a Class E felony is presumptively the minimum in the range unless there are enhancement factors present. T.C.A. § 40-35-210(c). Procedurally, the trial court is to increase the sentence within the range based upon the existence of enhancement factors and, then, reduce the sentence as appropriate for any mitigating factors. T.C.A. § 40-35-210(d), (e). The weight to be afforded an existing factor is left to the trial court's discretion so long as it complies with the purposes and principles of the 1989 Sentencing Act and its findings are adequately supported by the record. T.C.A. § 40-35-210, Sentencing Commission Comments; Moss, 727 S.W.2d at 237; see Ashby, 823 S.W.2d at 169.

Due to the defendant's prior DUI convictions, the trial court applied enhancement factor (2), that the defendant has a previous history of criminal convictions or criminal behavior in addition to those necessary to establish the appropriate range, to his sentence. See T.C.A. § 40-35-114(2). The defendant contends that the trial court erred by using the DUI convictions to enhance because they are misdemeanors and, therefore, can only be used to enhance a sentence if they are similar to the present offense. Citing State v. McKnight, 900 S.W.2d 36, 54 (Tenn. Crim. App. 1994), he argues that because the violation of the motor vehicle habitual offender order was unrelated to the prior DUIs, the trial court should disregard his prior DUI convictions in determining the length of his sentence. In McKnight, this court stated that "the defendant's prior misdemeanor involved conduct of the same nature as his convictions here. Thus, we hold that this factor was applicable to each of the defendant's offenses." Id. This court never stated, though, that misdemeanors unrelated to the involved conduct could not be used to enhance a defendant's sentence. In fact, courts routinely use any past criminal behavior as a factor to enhance sentences. The trial court properly applied enhancement factor (2).

Next, the defendant contends that the trial court should have applied mitigating factor (11), that the "defendant, although guilty of the crime, committed the offense under such unusual circumstances that it is unlikely that a sustained intent to violate the law motivated the criminal conduct." See T.C.A. § 40-35-113(11). In addition, he claims that the trial court should have considered that he has a supportive family, received an honorable discharge from the military, and has an exemplary work record as mitigating factors under the catchall mitigating provision. See T.C.A. § 40-35-113(13). We note that this court has stated that work ethic and family contribution are entitled to favorable consideration under T.C.A. § 40-35-113(13). McKnight, 900 S.W.2d at 55. Moreover, this court has held that work history should be considered in sentencing a defendant. State v. Kelley, 34 S.W.3d 471, 482-83 (Tenn. Crim. App. 2000). The record reflects that the defendant had an excellent employment history. His employer testified that the defendant had been

his shop manager for five years, that the defendant had never arrived late for work or missed work without calling first, and that he would not be able to continue his business without the defendant. We conclude that the trial court erred by not considering the defendant's work history as a mitigating factor. We note, though, that the defendant did not ask the trial court to apply mitigating factor (11) regarding his lack of a sustained intent to violate the law. Nevertheless, the uncontroverted evidence indicates that the defendant had made great strides in straightening his life and that his offense arose from aberrant conduct. These mitigating factors are entitled to substantial weight. However, in light of the defendant's extensive criminal history, we hold that even with applying mitigating factors (11) and (13), the defendant should receive a three-year sentence.

## II. PROBATION

The defendant contends that he should have received full probation. In denying the defendant's request for probation, the trial court ruled that T.C.A. § 55-10-616(c) did not prevent it from granting probation for violations of a motor vehicle habitual offender order but stated that based on the defendant's prior criminal record and this court's holding in State v. Blackhurst, 70 S.W.3d 88 (Tenn. Crim. App. 2001), probation was not an option for this defendant. The defendant claims that probation should have been granted because T.C.A. § 55-10-616(c) has been superseded by the Tennessee Criminal Sentencing Reform Act of 1989 and because the facts of Blackhurst are not applicable to this case. The state contends that probation is only allowed for defendants who violate motor vehicle habitual offender orders in emergency circumstances and that, in any event, the trial court properly denied the defendant's request for probation based upon the defendant's extensive criminal history. We hold that the Criminal Sentencing Reform Act of 1989, which states in T.C.A. § 40-35-303(a) that defendants receiving a sentence of eight years or less are generally eligible for probation, repeals by implication the prohibition of probation contained in the MVHO statute, T.C.A. § 55-10-616(c). Therefore, the trial court correctly determined that it could consider probation for the defendant. We conclude that the trial court improperly relied upon this court's holding in Blackhurst because the facts in Blackhurst are dissimilar to this case. We also conclude that the trial court improperly denied the defendant a sentence other than total confinement.

### A. T.C.A. § 55-10-616(c)

Pursuant to T.C.A. § 55-10-616(a), it is unlawful for a person to operate a motor vehicle after having been adjudged a motor vehicle habitual offender under the MVHO Act, T.C.A. § 55-10-601, et seq. Enacted before the implementation of the Tennessee Criminal Sentencing Reform Act of 1989, the MVHO Act states that for a defendant convicted of violating a traffic offender order, "[t]he court has no power to suspend any such sentence or fine, except that in cases where such operation is necessitated in situations of apparent extreme emergency which require such operation to save life or limb . . . ." T.C.A. § 55-10-616(c). In 1989, the legislature passed the Criminal Sentencing Reform Act. Pursuant to the Sentencing Act, T.C.A. § 40-35-303(a) states as follows:

A defendant shall be eligible for probation under the provisions of this chapter if the sentence actually imposed upon such

defendant is eight (8) years or less; provided, that a defendant shall not be eligible for probation under the provisions of this chapter if the defendant is convicted of a violation of § 39-17-417(b) or (i), § 39-13-304, § 39-13-402, § 39-15-402 or § 39-13-504. A defendant shall also be eligible for probation pursuant to § 40-36-106(e)(3).

A split in authority exists as to whether the 1989 Sentencing Act supersedes T.C.A. § 55-10-616(c) and thereby repeals the latter's denial of probation absent an emergency situation.

In State v. Ricky Fife, No. 03C01-9401-CR-00036, Blount County, slip op. at 3 (Tenn. Crim. App. June 15, 1995), this court held that the 1989 Sentencing Act supersedes the MVHO Act and, therefore, that all or part of a habitual traffic order offender's felony sentence could be suspended pursuant to T.C.A. § 40-35-303(a). In Ricky Fife, this court relied upon the reasoning in State v. Hicks, 848 S.W.2d 69 (Tenn. Crim. App. 1992), in which this court reached a similar result relative to the offense of driving on a revoked license.

In Hicks, the defendant was convicted of driving on a revoked license and sentenced to six months in jail with all but the first forty-five days suspended. Before the 1989 Sentencing Act, the maximum punishment for driving on a revoked license was eleven months, twenty-nine days, and a defendant was required to serve a minimum forty-five days in jail. However, on November 1, 1989, the Sentencing Act was implemented, classifying the offense of driving on a revoked license as a Class B misdemeanor and changing its punishment to six months. The defendant argued in Hicks that the 1989 Sentencing Act "repealed by implication the previously existing sentence for driving on a revoked license, including the mandatory minimum sentence to be served before a defendant is eligible for suspension of his sentence." Hicks, 848 S.W.2d at 70. This court agreed with the defendant, stating:

> If a later statute defines a crime that is defined or described in an earlier statute, the earlier statute is repealed. Likewise, the same result follows when a later statute changes a penalty. In Stinson v. State, 208 Tenn. 159, 344 S.W.2d 369, 371 (Tenn. 1961), the Tennessee Supreme Court stated that "where a subsequent penal statute changes a punishment, the former mode [of punishment] is thereby repealed." As well, if there is an irreconcilable conflict between two statutory provisions, there is a repeal of the older code section by implication. State v. Lewis, 198 Tenn. 91, 278 S.W.2d 81 (Tenn. 1955).

Id. The court noted that before the 1989 Sentencing Act, the DUI statute also had required that a defendant serve a mandatory minimum punishment in confinement. However, in response to the 1989 Sentencing Act, the legislature amended the DUI statute to state that the 1989 Sentencing Act did not amend or decrease the punishment for a DUI conviction. See T.C.A. § 55-10-403(m) (providing that "[n]othing in Acts 1989, ch. 591, the Sentencing Reform Act of 1989, shall be

construed as altering . . . the penalties established in this section for the offense of driving under the influence of an intoxicant"). The driving on a revoked license statute, though, includes no such provision. This court reasoned that the legislature's failure to retain expressly the mandatory minimum punishment for driving on a revoked license meant that the legislature intended for the 1989 Sentencing Act to repeal by implication the punishment provisions contained in the driving on a revoked license statute. Hicks, 848 S.W.2d at 71.

Relying on Ricky Fife, other cases also have concluded that T.C.A. § 55-10-616(c) has been superseded by the 1989 Sentencing Act. See State v. Trampas Dale Sweeney, No. 01C01-9702-CC-00053, Williamson County (Tenn. Crim. App. Feb. 27, 1998) (order); State v. Jeffrey Allen Phillips, No. 03C01-9612-CR-00475, Sullivan County (Tenn. Crim. App. Jan. 15, 1998) (order); State v. Toney L. Moore, No. 01C01-9609-CC-00392, Williamson County, slip op. at 7 n.3 (Tenn. Crim. App. Oct. 16, 1997); State v. Steven J. Haynes, No. 03C01-9608-CC-00321, Blount County, slip op. at 4 n.1 (Tenn. Crim. App. Aug. 12, 1997); State v. David W. Seiber, No. 01C01-9505-CR-00138, Williamson County, slip op. at 14-15 (Tenn. Crim. App. Feb. 13, 1997); State v. Timothy Lee Alexander, No. 02C01-9412-CR-00286, Shelby County, slip op. at 5 (Tenn. Crim. App. Oct. 11, 1995); State v. Michael Richmond, No. 02C01-9410-CR-00217, Shelby County (Tenn. Crim. App. Sept. 13, 1995).

On the other hand, in State v. William Bell, No. 02C01-9608-CR-00275, Shelby County, slip op. at 2 n.1 (Tenn. Crim. App. July 18, 1997), a panel of this court called the holding in Ricky Fife into question, stating the following in a footnote:

> The state argues that the court's power to suspend the appellant's sentence is statutorily restricted by Tenn. Code Ann. § 55-10-616(c) (1993). This provision states that the court has no power to suspend a sentence of a person convicted of operating a motor vehicle while in violation of a court order. In State v. Ricky Fife, No. 03C01-9401-CR-00036, Blount Co. (Tenn. Crim. App. June 15, 1995), this Court held that the 1989 Sentencing Reform Act superseded all former provisions and that a motor vehicle offender's felony sentence could be suspended pursuant to Tenn. Code Ann. § 40-35-303(a) (1990). We, however, investigated this issue. Our research reveals that Tenn. Code Ann. § 55-10-616(c) was enacted at the same time as Tenn. Code Ann. § 40-35-303(a). Parenthetically, this panel questions whether the General Assembly intended to implicitly repeal Section 55-10-616(c).

We note that the author of William Bell, now the Attorney General of the State of Tennessee, later concurred in Trampas Dale Sweeney, in which this court stated that pursuant to Ricky Fife, the 1989 Sentencing Reform Act superseded T.C.A. § 55-10-616(c). Trampas Dale Sweeney, order at 3-4. Moreover, the statement in William Bell that § 55-10-616(c) and § 40-35-303(a) were "enacted at the same time" is mistaken. The prohibition on probation has been included in T.C.A. § 55-10-616

since the MVHO Act was enacted in 1974, being codified as § 55-10-616(c) in 1988. In 1989, the legislature amended § 55-10-616(b), not (c), to state that a violation of the MVHO Act is a Class E felony. However, this amendment to include an offense classification cannot be viewed as a re-enactment or revival of § 55-10-616(c).

Since William Bell, other cases have stated, without analysis and without addressing the issue of whether the 1989 Sentencing Act supersedes T.C.A. § 55-10-616(c), that probation for a defendant who violates a motor vehicle habitual offender order is only permitted when the offense is committed in an emergency situation. In Cox v. State, 53 S.W.3d 287, 295 (Tenn. Crim. App. 2001), the defendant was convicted of violating a motor vehicle habitual offender order; DUI, third offense; and misdemeanor evading arrest. He received an effective two-year sentence with part of the sentence to be served on probation. Subsequently, the trial court revoked his probation, and the defendant filed a motion claiming that his sentence for violating the motor vehicle habitual offender order was void because it contained an impermissible probation component. The trial court dismissed the motion, and the defendant appealed to this court, which dismissed the appeal. However, in its opinion, this court noted that the judgment for the offense was not void on its face because pursuant to T.C.A. § 55-10-616(c), courts have limited power to suspend a motor vehicle habitual offender sentence when the defendant commits the offense during an extreme emergency.

Similarly, in Lester Johnson v. State, No. E2001-00019-CCA-R3-PC, Sevier County, slip op. at 1 n.1 (Tenn. Crim. App. July 11, 2002), a panel of this court stated in a footnote "that the only time the trial court may suspend the sentence of an individual convicted of a violation of § 55-10-616 is upon the finding of an emergency." See also State v. Jimmy D. Goode, No. E2000-02829-CCA-R3-CD, Sullivan County, slip op. at 3 (Tenn. Crim. App. Nov. 19, 2001) (noting that the MVHO Act "specifies that the only time the trial court may suspend a sentence for violation of the Act is in the event of an emergency"). Obviously, the issue of whether T.C.A. § 55-10-616(c) has been superseded by the 1989 Sentencing Act needs to be resolved.

A statute may be repealed by a subsequent statute either expressly or by implication. Equitable Life Assur. Soc. v. Grosvenor, 426 F. Supp. 67, 71 (W.D. Tenn. 1976). Repeals by implication are not favored and will only occur when there is an irreconcilable conflict between two statutes. Hibbett v. Pruitt, 162 Tenn. 285, 293, 36 S.W.2d 897, 900 (1931). If the two acts can stand together through a reasonable construction, there is no implied repeal. Metropolitan Government of Nashville v. Hillsboro Land Co., Inc., 222 Tenn. 431, 440, 436 S.W.2d 850, 854 (1968). When there is a manifest legislative intent that the general act shall be of universal application, the specific act must yield to the later general act and is repealed by implication. Trotter v. City of Maryville, 191 Tenn. 510, 519, 235 S.W.2d 13, 17 (1950). Furthermore, criminal statutes are to be strictly construed against the state and in favor of the defendant. State v. Rogers, 992 S.W.2d 393, 400 (Tenn. 1999).

In determining whether the 1989 Sentencing Act supersedes T.C.A. § 55-10-616(c), we believe this court's reasoning in State v. Hicks is dispositive. As previously stated, in Hicks, the defendant was convicted of driving on a revoked license pursuant to T.C.A. § 55-50-504 and argued

-8-

that he was entitled to full probation despite the fact that the statute required a defendant to serve at least forty-five days in confinement. In that opinion, this court analyzed the relationship of T.C.A. § 55-50-504 to the 1989 Sentencing Act by looking at how the legislature dealt with a similar provision in the DUI statute. This court stated as follows:

> We find it interesting that our General Assembly addressed this very issue in the driving under the influence statute but remained mute when it came to T.C.A. § 55-50-504. Before the implementation of the Sentencing Reform Act, the DUI statute also provided for a mandatory minimum punishment without the possibility of probation until the offender had served, day for day, the mandatory minimum sentence. T.C.A. § 55-10-403. However, the General Assembly at T.C.A. § 55-10-403(m) (Supp. 1991) provided as follows:
>
>> A violation of this part is a Class A misdemeanor. Nothing in Acts 1989, ch. 591, the Sentencing Reform Act of 1989, shall be construed as altering, amending or decreasing the penalties established in this section for the offense of driving under the influence of an intoxicant.
>
> The appellant submits that if the General Assembly had intended to exempt the punishment provisions for the offenses covered under the driving on a revoked license statute, they would have said so as they did in the DUI statute. We feel that the legislature did in fact consider the mandatory minimum provisions in the DUI statute and retained them in the 1989 Act. Had it wanted to retain the similar provisions in the driving on a revoked license statute, it would have done so. It chose not to; and, therefore, these provisions have been repealed by implication.

Hicks, 848 S.W.2d at 70-71. We believe the Hicks analysis warrants the same result in the present case. At the same time it enacted the 1989 Sentencing Act, the legislature enacted T.C.A. § 55-10-403(m), which specifies that the 1989 Sentencing Act does not apply to DUI punishments. As in Hicks, we believe that if the legislature had wanted to retain a similar provision in the MVHO statute, it would have done so.

We note that two attorney general's opinions dealing with this issue have been filed. The first opinion, released in 1984, answered the question of whether T.C.A. § 40-35-303(a), which allowed probation for defendants sentenced to ten years or less under the 1982 Criminal Sentencing Reform Act, repealed by implication the portion of T.C.A. § 55-10-616 that prohibited probation. Op. Tenn. Att'y Gen. No. 84-086 (Mar. 14, 1984). The opinion recognized that although repeals by

implication are not favored, T.C.A. § 40-35-303(a) repealed by implication the general prohibition of probation in T.C.A. § 55-10-616. The opinion stated,

> Several principles of statutory construction as well as the specific language of T.C.A. § 40-35-303(a) support a conclusion of implied repeal of those portions of T.C.A. § . . . 55-10-616 which prevent suspended sentence. The statutory interpretation principle that later legislation operates as a repeal of earlier acts is often relied upon by the courts. Statutes should be read to give "its language its usual and ordinary meaning, thus avoiding any forced construction." Moreover, criminal statutes must be strictly construed in favor of a defendant.
>
> The legislative intent appears clear that the "Tennessee Criminal Reform Act of 1982" applies to "[a]ll persons who commit crimes on or after July 1, 1982 . . ." § 40-35-112(a). Also, that subsection provides that persons convicted of crimes prior to July 1, 1982, are governed by the prior law, which "shall remain in full force and effect in every respect, including but not limited to sentencing, parole and probation. § 40-35-112(a). Relying upon this analysis, we believe that a court construing the two statutes would determine that T.C.A. § 40-35-303(a) governs probation as to all offenses occurring on or after July 1, 1982, allowing probation of the offenses set forth in § . . . 55-10-616.

(Most citations omitted).

Interestingly, a second opinion released in 1993 and answering the same question in light of the 1989 Sentencing Act came to the opposite conclusion. Op. Tenn. Att'y Gen. No. 93-33 (Apr. 6, 1993). The 1993 opinion states that T.C.A. § 40-35-303(a) "anticipates 'ineligible' defendants, and is not limited to those declared ineligible in § 40-35-303(a) but comprehends others who should be considered ineligible for probation, such as those convicted under § 55-10-616." The opinion also states that the

> prohibition of the suspension of sentences contained in § 55-10-616 (except in the extreme emergency situations specified) is consistent with the purposes of the Act as set out in § 40-35-102. Likewise, the prohibition is consistent with the sentencing considerations set out in § 40-35-103. Nothing is found in the Criminal Sentencing Reform Act of 1989 to indicate that the legislature intended to modify its decision that those offenders convicted under § 55-10-616 under normal circumstances should not be eligible for a suspended sentence or fine.

Finally, in concluding that the 1989 Sentencing Act does not modify the probation prohibition in the MVHO Act, the opinion relies on State v. Lowe, 661 S.W.2d 701 (Tenn. Crim. App. 1983), in which this court noted that when general and special provisions exist, the special provision will be deemed an exception to the general provision and will not be controlled by the general provision. The opinion makes no mention of the 1984 opinion nor explains how the 1989 Act revives the provision already repealed by the 1982 Act.

We believe the correct view is expressed in the 1984 opinion. We note that although the 1984 opinion dealt with the 1982 Criminal Sentencing Reform Act, the reasoning expressed in the 1984 opinion as to the legislature's intent is also sound under the 1989 Criminal Sentencing Reform Act. See T.C.A. § 40-35-104(a) (providing that defendants convicted of a felony or misdemeanor "shall be sentenced in accordance with this chapter"); T.C.A. § 40-35-117(a) (providing that defendants who commit crimes "on or after November 1, 1989, shall be tried and sentenced under the provisions of this chapter"); T.C.A. § 40-35-117(b) (providing that any defendant sentenced after November 1, 1989, for a crime committed between July 1, 1982 and November 1, 1989, "shall be sentenced under the provisions of this chapter"); T.C.A. § 40-35-117(c) (providing that for defendants who commit crimes before July 1, 1982, "prior law shall apply and remain in full force and effect in every respect, including, but not limited to, sentencing, parole and probation").

We also note that the rule of statutory construction upon which the attorney general relied in the 1993 opinion, stating that specific provisions are exceptions to general provisions, generally holds true when the general and special provisions are enacted at the same time, as was the case in Lowe. In this case, however, the prohibition of probation in the MVHO Act was enacted before the 1989 Sentencing Act's § 40-35-303(a). In such situations, an earlier "statute is implicitly repealed by a subsequent statute if the two statutes are in irreconcilable conflict." State v. Palmer, 902 S.W.2d 391, 393 (Tenn. 1995); see also Sutherland Statutory Construction § 22.22 (5th ed. 1992) (stating, "Where the existence of a prior act . . . is partially terminated by the inconsistency of provisions in a later act, the repealed provisions of the prior statute are replaced by the inconsistent provisions of the new act"). Moreover, the 1989 amendment to T.C.A. § 55-10-616(b), which made a violation of the MVHO Act a Class E felony, did not serve as a re-enactment of the entire MVHO Act. "An amendatory statute incorporates itself into the original statute and the two become one law." 23 Tenn. Jur. Statutes § 46 (1998); see Noll & Thompson v. Railroad Co., 112 Tenn. 145, 146, 79 S.W. 380, 382 (1904) (stating that "the original act is to be read as if it contained the provisions of the amendatory act, as to all authorized actions [occurring] after the passage of the latter"); see also Sutherland Statutory Construction § 22.35 (5th ed. 1992) (stating that the "original section as amended and the unaltered sections of the act . . . are to be read together"). We conclude that the Criminal Sentencing Reform Act of 1989 repeals by implication the MVHO Act's general prohibition of probation in T.C.A. § 55-10-616(c) and, therefore, that the trial court properly determined it could consider probation for the defendant.

## B. Denial of Probation

The trial court ruled that based upon the defendant's prior criminal record and this court's reasoning in State v. Blackhurst, 70 S.W.3d 88 (Tenn. Crim. App. 2001), the defendant was not entitled to probation. The defendant contends that the facts and circumstances in Blackhurst are so dissimilar from the facts and circumstances in the present case as to warrant a different result. The state concedes that Blackhurst is irrelevant to this case. Nevertheless, the state contends that the defendant's prior criminal history "clearly indicates his failure to conform and rehabilitate" and justified the trial court's denying his request for probation. We agree with the parties that Blackhurst is dissimilar to this case. Also, we conclude that the particular circumstances of the defendant's conduct in this case and his proven change of lifestyle and social reliability warrant an alternative sentence.

In Blackhurst, the defendant crashed into the victims' Honda Passport while heavily intoxicated and left the accident scene without checking on whether the three people in the car, two of whom were children, were injured. 70 S.W.3d at 91. The defendant then wrecked a second time, at which point the police found and arrested her for DUI and leaving the scene of an accident. The defendant pled guilty to DUI, second offense; leaving the scene of an accident; and three counts of reckless aggravated assault. At a sentencing hearing, the Passport's driver testified about her and the children's injuries and about having to receive psychological therapy as a result of the accident. The defendant's presentence report showed that she had two prior DUI convictions and a prior conviction for leaving the scene of an accident. The defendant received an effective sentence of three years, eleven months, and twenty-nine days, and the trial court ruled that the defendant could serve the remainder of her sentence on probation because she was employed, a homeowner, was reasonably healthy, and expressed remorse. However, this court reversed, holding that the defendant's failing to seek treatment for her alcohol addition, lack of candor, prior convictions, and "terrible and unforgivable judgment in driving while intoxicated and in deserting the victims" warranted denying full probation. Id. at 98.

Contrary to the trial court's conclusions, we view the circumstances in the present case to be materially different than those in Blackhurst. Unquestionably, the defendant's prior criminal record is extensive. However, the complete change of lifestyle since his marriage in 1998 is readily shown by the record. The defendant has proven himself to be open to rehabilitation. As for the circumstances surrounding his present violation of the law, we view them, as the trial court viewed them, to be not aggravated.

When determining if incarceration is appropriate, a trial court should consider whether (1) confinement is needed to protect society by restraining a defendant who has a long history of criminal conduct, (2) confinement is needed to avoid depreciating the seriousness of the offense or confinement is particularly suited to provide an effective deterrence to people likely to commit similar offenses, or (3) less restrictive measures than confinement have frequently or recently been applied unsuccessfully to the defendant. Ashby, 823 S.W.2d at 169 (citing T.C.A. § 40-35-103(1)(A)-(C)). The trial court may also consider the mitigating and enhancing factors set forth in T.C.A. §§ 40-35-113 and -114. T.C.A. § 40-35-210(b)(5); State v. Boston, 938 S.W.2d 435,

-12-

438 (Tenn. Crim. App. 1996).  In addition, a trial court should consider a defendant's potential or lack of potential for rehabilitation when determining if an alternative sentence would be appropriate.  T.C.A. § 40-35-103(5); <u>Boston</u>, 938 S.W.2d at 438.  As previously stated, in conducting a <u>de</u> <u>novo</u> review, we must consider (1) the evidence, if any, received at the trial and sentencing hearing, (2) the presentence report, (3) the principles of sentencing and arguments as to sentencing alternatives, (4) the nature and characteristics of the criminal conduct, (5) any mitigating or statutory enhancement factors, (6) any statement that the defendant made on his own behalf, and (7) the potential for rehabilitation or treatment.  T.C.A. §§ 40-35-102, -103, -210; <u>see</u> <u>Ashby</u>, 823 S.W.2d at 168.

Initially, we note that the defendant was sentenced as a Range II, multiple offender and, therefore, was not entitled to the presumption that he was a favorable candidate for alternative sentencing.  <u>See</u> T.C.A. § 40-35-102(6).  However, we believe that the record shows that the defendant deserves a sentence which does not involve total confinement.  The defendant's actions do not raise a question as to his desire to better himself and to adhere to the rules of society.  Rather, they indicate a lack of appreciation of the seriousness of <u>any</u> violation of the law, given the defendant's prior record.  In this respect, some incarceration is deserved to impress upon the defendant a need for him to appreciate the seriousness of his actions, as innocuous as they may have seemed to him at the time.  Therefore, we reverse the trial court and modify the length of the sentence to three years.  We remand the case for the trial court to devise an alternative sentence involving some confinement but in such a manner as to allow the defendant to maintain his employment and support his family.

_____
JOSEPH M. TIPTON, JUDGE