# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT KNOXVILLE
### August 26, 2008 Session

## STATE OF TENNESSEE v. RALPH LESTER NELSON

**Direct Appeal from the Circuit Court for Sullivan County**
**No. S53,313     R. Jerry Beck, Judge**

———————————————

**No. E2008-00128-CCA-R3-CD - Filed September 23, 2008**

———————————————

The Defendant, Ralph Lester Nelson, pled guilty to one count of violating a motor vehicle habitual offender order, a Class E felony; one count of driving without a seatbelt, a Class C misdemeanor; and one count of driving without proof of financial responsibility, a Class E misdemeanor. After a sentencing hearing, the trial court sentenced the Defendant as a multiple offender to an effective sentence of three years in the Tennessee Department of Correction (TDOC). On appeal, the Defendant claims that the trial court erred when it did not grant him alternative sentencing. After a thorough review of the record and the applicable law, we affirm the judgment of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgments of the Criminal Court**
**Affirmed**

ROBERT W. WEDEMEYER, J., delivered the opinion of the court, in which JOHN EVERETT WILLIAMS and J.C. MCLIN, JJ., joined.

Terry L. Jordan, Blountville, Tennessee, for the Appellant, Ralph Lester Nelson.

Robert E. Cooper, Jr., Attorney General and Reporter; Michael E. Moore, Solicitor General; Deshea Dulany, Assistant Attorney General; H. Greeley Wells, District Attorney General; Julie R. Canter, Assistant District Attorney General, for the Appellee, State of Tennessee.

## OPINION

### I. Facts

### A. Plea Hearing

This case arises from the Defendant's arrest on November 24, 2006, for violating a habitual motor vehicle offender order. In 1994, the Defendant was declared a habitual motor vehicle offender

(hereinafter an "HMVO") pursuant to Tenn. Code Ann. § 55-10-616. At the guilty plea hearing, the State gave the following account of the crime:

> [O]n November 24, 2006, Trooper John Taylor with the highway patrol observed Ralph Nelson in operation of a 1994 Chevrolet….Mr. Nelson was not wearing a seatbelt. Upon stopping the vehicle Trooper Taylor asked Mr. Nelson for his driver's license. Nelson couldn't present one. Once a driver's history was ran [sic] it revealed he was a habitual traffic offender. Mr. Nelson was also unable to produce proof of insurance.

At the hearing, the Defendant pled guilty to each count of the indictment.

## B. Sentencing Hearing

At the sentencing hearing, the trial court heard testimony from the Defendant's girlfriend and the Defendant; read a letter from the Defendant's girlfriend's mother; and reviewed the presentence report. The Defendant's girlfriend, Brenda Fleenor testified that the Defendant has reformed his behavior. Fleenor testified that during the two years of their relationship she had not seen the Defendant drive prior to the day of the violation. She testified that the Defendant does not have a vehicle and that he was driving her vehicle on the day of the violation. Fleenor said that she had not seen the Defendant drink and that he had been steadily employed throughout their relationship. She testified that she has driven him to work and would continue to do so. Also, she said she would transport him to and from any probation obligations.

Fleenor told the court "I've read the probation report, and that's just not the man I know." She explained that the Defendant plays a large role in maintaining and repairing both their shared home and Fleenor's mother's (Barbara Stallcup's) home:

> He mows [Stallcup's] yard. He's done–he does car repairs for her and for me. He's moved furniture. He's installed windows. Just what everything needs to be done [sic]. My mom says he's been a godsent [sic]. He's been a godsent to both of us. It's just the–the report is just–just not the Ralph Nelson that we know.

Fleenor said that she was in the process of filing for disability based on a "bad back" and chronic obstructive pulmonary disease, which requires daily breathing treatments. She explained that "he's our 100% support. He helps my mother out. She's a widow." Fleenor concluded by informing the court that the Defendant attends church with her and her daughter and is their "sole support."

The Defendant testified that he had not had a drink in "over two and a half years" and attributed his sobriety to his girlfriend. In response to defense counsel's inquiry into what happened on the day of the offense, the Defendant said "My stupidity...The day before I was cutting a tree and...my head got busted open and I had to go to the hospital." He went on to explain that upon returning home from the hospital the next day, his employer's grandson called and asked for a ride to the shop to pick up equipment. The Defendant stated that although he was not wearing his seatbelt when the officer stopped his car, he had not been drinking or abusing any substance.

2

The Defendant's presentence report was also entered into evidence. According to the presentence report, the then thirty-eight year old Defendant dropped out of high school during the tenth grade. He began drinking alcohol when he was seventeen years old and drank about one six-pack of beer each night. Beginning in 1988, when he was nineteen, the Defendant accrued a number of driving or alcohol-related offenses. He currently has: five convictions for driving under the influence; four convictions for public intoxication; four conviction for driving on a revoked license; three convictions for violation of an habitual traffic offender order; one conviction for possession of marijuana; one conviction for possession of drug paraphenalia; and several miscellaneous traffic offenses.

The presentence report also indicated that the Defendant completed three probationary periods with varying success. In 1996, although he tested positive for marijuana once during the probation period, he served a one-year supervised probation period, in which no violation report was filed. However, the Defendant was instructed to attend substance abuse and literacy courses, but he did not complete either program. In 1999, the Defendant was ordered to serve eighteen months, but he was released on determinate release probation after six months. However, the Defendant violated his release by testing positive for marijuana. His probation was revoked, and the trial court ordered the Defendant to serve thirty days. However, after his release, he violated his probation again by not only violating the HMVO order, but also driving under the influence. In 2002, the Defendant successfully served a term of probation. After serving six months of a two-year term, the Defendant was released on determinate release probation and completed the remaining eighteen months of probation without incident.

In the presentence report, the Defendant stated that he was in good health and had no handicap or disability. He stated that he has not abused alcohol in over two and a half years and that he lived with Fleenor and her 10-year old daughter in a home they rented from Stallcup. The Defendant was sporadically employed by Kwickway Construction since 1993, and he was employed by Mike Steadman Construction at the time of the hearing.

The defense introduced a letter praising the Defendant from Stallcup, the Defendant's girlfriend's mother. Stallcup stated that she had known the Defendant for two years and confirmed that she leases a home to her daughter and the Defendant. During the two years that she had known the Defendant, Stallcup found him to be "a dependable and trustworthy friend." Also, she stated that she had never seen the Defendant drive, drink, or use drugs. Stallcup concluded by calling the Defendant "God-sent" and explaining that he does everything from mowing the lawn to repairing cars.

After reviewing the evidence presented, the trial court denied the Defendant's motion for alternative sentencing. The court explained that although it was impressed with the Defendant's service to his girlfriend's family, it remained troubled by the Defendant's lengthy list of prior offenses. The trial court then ordered that the Defendant serve his sentence in confinement. It is from this judgment that the Defendant now appeals.

**II. Analysis**

The Defendant contends that the trial court improperly denied alternative sentencing because he had changed his lifestyle during the period leading up to the offense. He asserts that, like the defendant in *State v. Martin*, 146 S.W.3d 64 (Tenn. Crim. App. 2004), he had shown himself open to rehabilitation. The State claims that the trial court properly denied alternative sentencing. We agree with the State. Therefore, we affirm the judgments of the trial court.

When a defendant appeals the manner of service of a sentence imposed by a trial court, this court conducts a *de novo* review of the record with a presumption of correctness as to the trial court's determination. T.C.A. § 40-35-401(d) (2005). However, this presumption of correctness arises only if the record affirmatively shows that the trial judge considered both the sentencing principles and all relevant facts and circumstances. *State v. Ashby*, 823 S.W.2d 166, 169 (Tenn. 1991). The appealing party carries the burden of showing the sentence is improper. T.C.A. § 40-35-401(d), Sentencing Commission Comments. Even if we prefer a different result, we may not disturb the sentence if the trial court followed the statutory sentencing procedure, made findings of fact adequately supported in the record, and gave due consideration and proper weight to the factors and principles that are relevant to sentencing under the 1989 Sentencing Act. *State v. Fletcher*, 805 S.W.2d 785, 789 (Tenn. Crim. App. 1991).

The Tennessee Supreme Court noted recently that, due to the 2005 sentencing amendments, no defendant is *presumed* to be a favorable candidate for alternative sentencing. *State v. Carter*, 254 S.W.3d 335, 347 (Tenn. 2008) (citing T.C.A. § 40-35-102(6) (2006)). Instead, a defendant not within "the parameters of subdivision (5) [of T.C.A. § 40-35-102], and who is an especially mitigated or standard offender convicted of a Class C, D, or E felony, "should be considered" as a favorable candidate for alternative sentencing options in the absence of evidence to the contrary." *Id.* (footnote omitted). Generally, defendants classified as Range II or Range III offenders are not to be considered as favorable candidates for alternative sentencing.[1] T.C.A. § 40-35-102(6); 2007 Tenn. Pub. Acts 512.

The Tennessee Code recommends that, when sentencing a defendant to confinement, a trial court should consider whether:
> (A) Confinement is necessary to protect society by restraining a defendant who has a long history of criminal conduct;
> (B) Confinement is necessary to avoid depreciating the seriousness of the offense or confinement is particularly suited to provide an effective deterrence to others likely to commit similar offenses; or
> (C) Measures less restrictive than confinement have frequently or recently been applied unsuccessfully to the defendant.

---

[1]The legislature did carve out an exception to this rule where if "a defendant with at least three (3) felony convictions is otherwise eligible, such a defendant may still be considered a favorable candidate for any alternative sentencing that is within the jurisdiction of and deemed appropriate by a drug court." 2007 Tenn. Pub. Acts 512.

4

T.C.A. § 40-35-103 (2008). Also, the trial court may consider the mitigating and enhancing factors set forth in T.C.A. §§ 40-35-113 and -114. T.C.A. § 40-35-210(b)(5); *State v. Boston*, 938 S.W.2d 435, 438 (Tenn. Crim. App. 1996). A trial court should also consider a defendant's potential or lack of potential for rehabilitation when determining if an alternative sentence would be appropriate. T.C.A. § 40-35-103(5); *Boston*, 938 S.W.2d at 438.

In conducting *de novo* review of a sentencing determination, we must consider (1) the evidence, if any, received at the trial and sentencing hearing; (2) the presentence report; (3) the principles of sentencing and arguments as to sentencing alternatives; (4) the nature and characteristics of the criminal conduct; (5) any mitigating or statutory enhancement factors; (6) any statement that the defendant made on his own behalf; and (7) the potential for rehabilitation or treatment. T.C.A. § 40-35-102, -103, -210 (2007); *see State v. Ashby*, 823 S.W.2d 166, 168 (Tenn. 1991).

In this case, the Defendant is not within the class of offenders considered to be favorable candidates for alternative sentencing. As discussed above, in Tennessee courts are to consider standard or especially mitigated offenders convicted of Class C, D, or E felonies as "favorable for alternative sentencing." T.C.A.§ 40-35-102(6). However, the Defendant is a Range II multiple offender. *See* T.C.A. § 40-35-106(a)(1), (c) (2005). Therefore, the Defendant cannot avail himself of the statutory language that favors alternative sentences for standard and especially mitigated offenders. T.C.A. § 40-35-102(6) (2007).

In the present case, unlike in *Martin*, the trial court's determination merits a presumption of correctness. If the record affirmatively shows that the trial judge considered the sentencing principles and all relevant facts and circumstances, then a presumption of correctness arises as to the trial court's determinations. *See Ashby*, 823 S.W.2d at 169. Here, the record affirmatively shows that the trial court gave due consideration and weight to the evidence presented at the plea hearing, the presentence report, the principles of sentencing, mitigating factors, and the Defendant's potential for rehabilitation. Taking all of these factors into consideration, the trial court determined that the Defendant should serve his sentence in confinement. We conclude that the trial court's determination that the denial of an alternative sentence was proper is presumptively correct.

In *State v. Martin*, 146 S.W.3d 64 (Tenn. Crim. App. 2004), a panel of this court reversed the trial court's decision to deny alternative sentencing to an HMVO violator. The Defendant argues that the trial court should have granted him alternative sentencing because Martin's HMVO violation is so factually similar to his own HMVO violation. Although the respective facts of each defendant's underlying violation are somewhat similar, the proceedings of the *Martin* trial court and the trial court here differ significantly.

Like the Defendant, Martin had been convicted of numerous felonies and misdemeanors. In *Martin*, we ultimately concluded that, given Martin's behavior in the years leading up to his arrest and the circumstances surrounding his violation, he "deserve[d] a sentence which [did] not involve total confinement." *Id.* at 77. However, the trial court in *Martin* failed to consider two mitigating

factors when it sentenced Martin. *Id.* at 69-70. This omission caused the *Martin* denial of alternative sentencing to lose the presumption of correctness that would ordinarily accompany it.

Here, the trial court considered all mitigating factors in determining that incarceration was proper. The trial court considered the claims of the Defendant, Stallcup, and Fleenor that the Defendant was a changed man open to rehabilitation. However, while considering the evidence the trial court frequently commented that, although it was impressed with the Defendant's "tremendous help," it doubted the Defendant's rehabilitative potential given his repeated violations of the law and failures to comply with probation conditions. The trial court explained: "You know, usually if a person has five or six prior felonies, hope for rehabilitation is usually weak....I'm just not sure it would be in the best interest of the public to again place the Defendant on some type of non-incarcerated [sentence]." We conclude that, in denying the Defendant an alternative sentence, the trial court properly considered the Defendant's good deeds as well as the Defendant's extensive prior criminal history and lack of success on probation.

The record affirmatively establishes that the trial court based its denial of alternative sentencing on both sentencing principles and the relevant facts and circumstances. Therefore, the trial court properly required the Defendant to serve his sentence in confinement. The Defendant is not entitled to relief.

### III. Conclusion

After a thorough review of the record and applicable authorities, we conclude that the trial court properly denied the Defendant alternative sentencing. We affirm the judgment of the trial court.

_____
ROBERT W. WEDEMEYER

6