# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT JACKSON
### Assigned on Briefs February 6, 2007

## STATE OF TENNESSEE v. BARTON LANE FOWLER

**Appeal from the Circuit Court for Dyer County**
**No. C04-520     Lee Moore, Judge**

---

**No. W2006-01262-CCA-R3-CD   - Filed March 7, 2007**

---

The defendant, Barton Lane Fowler, pleaded guilty to violation of the Motor Vehicle Habitual Offenders Act and was sentenced to two years in prison. On appeal, the defendant argues that the trial court erred in refusing to impose an alternative sentence. We conclude that the trial court acted properly in sentencing the defendant to prison and affirm the judgment of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed.**

D. KELLY THOMAS, JR., J., delivered the opinion of the court, in which JOSEPH M. TIPTON, P.J., and JOHN EVERETT WILLIAMS, J., joined.

James E. Lanier, District Public Defender; Patrick R. McGill, Assistant District Public Defender, for the appellant, Barton Lee Fowler.

Robert E. Cooper, Jr., Attorney General and Reporter; J. Ross Dyer, Assistant Attorney General; C. Phillip Bivens, District Attorney General; Lance E. Webb, Assistant District Attorney General, for the appellee, State of Tennessee.

## OPINION

In January 2003, a Tennessee State Trooper stopped a vehicle for disregarding a traffic control device at an entrance to Interstate 155 in Dyersburg. When the trooper asked the driver for his driver's license, the driver, who identified himself as the defendant, Barton Lane Fowler, stated that he was not in possession of his license. After the trooper ran the defendant's name and date of birth through the trooper's in-car computer, the trooper discovered that the defendant's license had been revoked in May 1998 as a habitual motor vehicle offender. The defendant was arrested and subsequently indicted by a Dyer County grand jury on one count of violating the Motor Vehicle Habitual Offenders ("MVHO") Act, Tennessee Code Annotated §§ 55-10-601-618 (2004). In May 2006, the defendant pleaded guilty to the charge in Dyer County Circuit Court. After a sentencing hearing, the trial court sentenced the defendant to two years in prison as a Range II, multiple

offender. The defendant appeals his sentence, claiming that the trial court erred in refusing to impose an alternative sentence. Upon review, we affirm the sentence imposed by the trial court.

## SENTENCING HEARING TESTIMONY

The defendant's mother, Marilyn Fowler, testified that the defendant was an alcoholic but that he had been sober for seven years at the time of the sentencing hearing. Fowler also testified that her son has Tourette Syndrome. On cross-examination, the mother admitted that her son has two prior felony convictions and had been in jail numerous times.

The defendant then called Adam Williams, who testified that he was the co-owner of Christian Brothers Builders. Williams stated that the defendant "sees over my crews." However, on cross-examination Williams was unable to explain why the business's co-owners, Dan and Liz Holland, had informed the Board of Probation and Parole that the construction company had nothing to do with Adam Williams. Williams also admitted that he did not have a contractor's license.

The defendant's fiancée, Joann Burnett, testified that the defendant quit drinking when they met in 1999 and that the defendant has tried to be a "family man" since then. Burnett claimed that the defendant had lost a couple jobs due to his Tourette's.

The defendant, the final witness, testified that his violation of the MVHO Act was the result of "poor judgment and foolishness." He testified that he had been going through job training during the week and was able to get rides to and from the training site, but he was unable to get a ride the last day of training, so he drove to training that day. The defendant claimed that he was eligible to have his license restored, but he could not afford the fines and reinstatement fees. On cross-examination, the defendant admitted he had been declared an MVHO in May 1998 and had been arrested for violating the MVHO Act in July 1998. The defendant also admitted that in July 2000, he was convicted of domestic assault against his fiancée. The defendant admitted that the offense for which he had pleaded guilty resulted from a traffic stop during which a state trooper had caught the defendant making an illegal left turn onto the Interstate. The defendant, in an effort to explain his failure to appear on this charge for two years, also claimed that he was unaware until shortly before his guilty plea that he had been indicted on the current charge.

## ANALYSIS

An appellate court's review of sentencing is de novo on the record with a presumption that the trial court's determinations are correct. Tenn. Code Ann. § 40-35-401(d) (2003).[1] As the Sentencing Commission Comments to this section note, on appeal the burden is on the defendant

---

[1]We note that on June 7, 2005, the General Assembly amended Tennessee Code Annotated sections 40-35-102(6), -114, -210, -401. See 2005 Tenn. Pub. Acts ch. 353, §§ 1, 5, 6, 8. However, the amended code sections are inapplicable to the defendant's appeal because the defendant, who was arrested and indicted before the Sentencing Guidelines were amended, was sentenced according to the pre-2005 law.

to show that the sentence is improper. This means that if the trial court followed the statutory sentencing procedure, made findings of fact that are adequately supported in the record, and gave due consideration and proper weight to the factors and principles that are relevant to sentencing under the 1989 Sentencing Act, the court may not disturb the sentence even if a different result were preferred. State v. Fletcher, 805 S.W.2d 785, 789 (Tenn. Crim. App. 1991).

However, "the presumption of correctness which accompanies the trial court's action is conditioned upon the affirmative showing in the record that the trial court considered the sentencing principles and all relevant facts and circumstances." State v. Ashby, 823 S.W.2d 166, 169 (Tenn. 1991). In this respect, for the purpose of meaningful appellate review,

> [T]he trial court must place on the record its reasons for arriving at the final sentencing decision, identify the mitigating and enhancement factors found, state the specific facts supporting each enhancement factor found, and articulate how the mitigating and enhancement factors have been evaluated and balanced in determining the sentence. Tenn. Code Ann. § 40-35-210(f) (1990).

State v. Jones, 883 S.W.2d 597, 599 (Tenn. 1994).

In conducting its de novo review, the appellate court must consider (1) the evidence, if any, received at the trial and sentencing hearing, (2) the presentence report, (3) the principles of sentencing and arguments as to sentencing alternatives, (4) the nature and characteristics of the criminal conduct, (5) any mitigating or statutory enhancement factors, (6) any statement that the defendant made on his own behalf, and (7) the potential for rehabilitation or treatment. Tenn. Code Ann. §§ 40-35-102, -103, -210 (2006); see Ashby, 823 S.W.2d at 168; Moss, 727 S.W.2d at 236-37.

In this case, the trial judge sentenced the defendant to two years in prison, the minimum sentence for a Range II, multiple offender convicted for a Class E felony. The defendant argues that the trial court erred in sentencing the defendant to a prison sentence and refusing an alternative sentence.[2] We disagree.

In determining whether incarceration or an alternative sentence is most appropriate, a trial court should consider whether (1) confinement is needed to protect society by restraining a defendant who has a long history of criminal conduct, (2) confinement is needed to avoid depreciating the seriousness of the offense or confinement is particularly suited to provide an effective deterrence to people likely to commit similar offenses, or (3) less restrictive measures than confinement have frequently or recently been applied unsuccessfully to the defendant. Ashby, 823 S.W.2d at 169 (citing Tenn. Code Ann.. § 40-35-103(1)(A)-(C)). The trial court may also consider the mitigating and enhancing factors set forth in Tenn. Code Ann. §§ 40-35-113 and -114. Tenn. Code Ann. §

---

[2]Although the MVHO Act states that a trial court may not suspend a sentence or fine under the Act, this court has ruled that alternative sentences are appropriate for persons sentenced under the Act. State v. Martin, 146 S.W.3d 64, 70 (Tenn. Crim. App. 2004).

40-35-210(b)(5); State v. Boston, 938 S.W.2d 435, 438 (Tenn. Crim. App. 1996). In addition, a trial court should consider a defendant's potential or lack of potential for rehabilitation when determining if an alternative sentence would be appropriate. Tenn. Code. Ann. § 40- 35-103(5); Boston, 938 S.W.2d at 438. A defendant convicted of a Class C, D, or E felony and sentenced as an especially mitigated or standard offender "is presumed to be a favorable candidate for alternative sentencing options in the absence of evidence to the contrary." Tenn. Code Ann. § 40-35-102(6) (2003). However, because the defendant pled guilty to a Class E felony, as a Range II, multiple offender, he is not entitled to such a presumption.

The defendant argues that this court's holding in State v. Martin, 146 S.W.3d 64 (Tenn. Crim. App. 2004), and the similarities between Martin and the instant case are grounds for an alternative sentence. In Martin, this court remanded the case, requiring the trial court to devise an alternative sentence for the defendant, who had been convicted for violating the MVHO Act. 146 S.W.3d at 77. The reasons why this court held that an alternative sentence was appropriate in Martin included: (1) the defendant's driving was an isolated incident; (2) the defendant was eligible to reinstate his license but had not because he did not have the financial resources; (3) his work history; (4) his change of behavior after meeting his wife; (5) his relationship and caring for his wife's children; and (6) his openness to rehabilitation. Id. at 67-68. This court added that "[t]he defendant's actions do not raise a question as to his desire to better himself and to adhere to the rules of society." Id. at 77.

In this case, the defendant argues that (1) his driving was a singular incident; (2) he was eligible to reinstate his license but did not due to his financial situation; (3) he maintained employment to support his family as best he could given that he has Tourette Syndrome; (4) his complete change of behavior after meeting his fiancée; (5) his interaction with and care for his fiancée's children; and (6) he is open to rehabilitation as he has not consumed alcohol for seven years.

However, despite the similarities between the defendant in this case and the Martin defendant, the facts between the two cases differ enough to justify the sentence imposed by the trial court in this case. Unlike the defendant in Martin, the defendant's convictions are not all alcohol and driving related—the record indicates that the defendant was convicted of several offenses including possession of marijuana, disorderly conduct, unlawful possession of a firearm, domestic assault, resisting arrest, and vehicular homicide. Further, unlike the defendant in Martin, the defendant here has not shown a complete change in his lifestyle or proven himself open to rehabilitation. While the trial court noted that the defendant appeared to have been "doing better" in the two years prior to his sentencing, and while the defendant and his family claimed he stopped drinking in 1999, the defendant was convicted of domestic assault in 2000 and disorderly conduct in 2001, and the defendant had admitted taking his fiancée's prescription hyrdocodone pills. These facts indicate that the trial court's decision to refuse alternative sentencing for the defendant was an appropriate choice.

Perhaps the most compelling reason, though, for affirming the trial court's sentence was

stated by the trial court as follows:

> The Court does have to consider that you do have the long history of criminal conduct, and you have been—you have been given alternative sentencing time and time again, Mr. Fowler. Every time you had one of these misdemeanor convictions, and you—well, that's not sentencing under the Sentencing Act, but you get 11[months]-29[days], and it's suspended to thirty days or sixty days or for months. That is—that's alternative, that's a form of alternative sentencing. You did not do well under that. It was—it was not successful.

Similarly, in stating that the trial court in <u>Martin</u> should sentence the defendant to at least some time in prison, this court noted that the defendant's actions "indicate[d] a lack of appreciation of the seriousness of *any* violation of the law, given the defendant's prior record. . . . [S]ome incarceration is deserved to impress upon the defendant a need for him to appreciate the seriousness of his actions, as innocuous as they may have seemed at the time." <u>Martin</u>, 146 S.W.3d at 77 (emphasis in original). Given the defendant's prior criminal history, his inconclusive attempts to reform his life, and the ineffectiveness of "less restrictive measures"in the past, the trial court was well within its discretion to sentence the defendant to two years in prison.

## CONCLUSION

The trial court's ruling regarding the defendant's sentence was well-reasoned and is fully supported by the record on appeal. The judgment of the trial court is affirmed.

_____
D. KELLY THOMAS, JR., JUDGE